UNITED STATES of America, Plaintiff–Appellee,

v.

Keith NEWMAN, Defendant–Appellant.

No. 97–2912.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1998.

Decided July 15, 1998.

Zaldwaynaka L. Scott, Office of the United States Attorney, Criminal Division, Lori Lightfoot (argued), Office of the United States Attorney, Civil Division, for Plaintiff–Appellee.

Frederiack F. Cohn (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Keith Newman pleaded guilty to one count of conspiring to commit theft from a program receiving federal funds in violation of 18 U.S.C. § 371. Pursuant to his plea agreement, Newman stipulated to certain facts relating to his criminal conduct. In exchange for these admissions, the Government promised (among other things) to move the district court to impose a sentence of 66% of

the low end of the applicable Guideline range based on Newman's substantial assistance to law enforcement authorities. *See* USSG § 5K1.1. Sometime before the sentencing hearing, though, Newman contested many of the facts to which he had stipulated. The district court resolved these disputes against Newman at the sentencing hearing and computed his sentence under the Guidelines accordingly. On appeal, Newman argues that the district court erroneously relied upon his stipulations in making its findings of fact and concomitant Guideline calculations. He also alleges that various other sentencing errors mandate a remand. His claims of error, however, do not persuade us, and we affirm the district court's sentence.

## I.

Newman conspired to steal funds from St. Francis Hospital of Blue Island, Illinois, from March 9, 1990 through August 31, 1992. During this time, Newman operated a business called Pure Energy, Incorporated, which sold a variety of high-nutrient fruit juices, while his friend and associate, Harold Shapiro, served as the comptroller of St. Francis Hospital. Newman experienced financial troubles soon after opening his first Pure Energy store. He discussed these problems with Shapiro, and the two men agreed to alleviate these difficulties by embezzling funds from St. Francis bank accounts. During the life of this conspiracy, the men defrauded the hospital out of nearly $1.5 million.

Newman signed a plea agreement in which he stipulated to the facts underlying his criminal offense. These facts were also discussed in great detail in the Government's information describing the charged offense— the information to which Newman pleaded guilty. Moreover, in his plea agreement, Newman stipulated to additional, uncharged criminal conduct. *See* USSG § 1B1.2(c) ("A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."). In November 1991, Newman obtained a line of credit from American Midwest Bank in Chicago by pledging funds fraudulently obtained from St. Francis Hospital. After nearly a year, he had extended this line of credit to $715,000, and it lapsed into default. The Bank was unable to collect on the fraudulent accounts offered as collateral and therefore incurred a loss of $715,000. In addition to his stipulated bank fraud, Newman admitted that he defrauded a friend, Michael Aufrecht, into investing $245,000 in Pure Energy and personally guaranteeing a loan for the corporation at Success Bank in Chicago. As a result of this deception, Aufrecht sustained a loss of $740,000.

Newman later came to regret these admissions and filed numerous pro se objections to the facts as set forth in the Presentence Investigation Report (PSI). In these objections, he contested the accuracy of many of the facts concerning the specific offense conduct and the other stipulated offenses. At the sentencing hearing, the district court did not find Newman's pro se objections to be persuasive in light of his prior stipulations. The court resolved these factual issues (discussed infra in relevant detail) against Newman, but it granted Newman's motion for a departure based on his acceptance of responsibility. *See* USSG § 3E1.1. Once its Guideline calculations yielded a sentence above 18 U.S.C. § 371's maximum penalty of sixty months, the district court asked the parties whether any further sentencing inquiry was necessary. The parties replied that further inquiry was not necessary, even though the court had not yet ruled on one of Newman's proposed grounds for a downward departure. The court preliminarily sentenced Newman to the statutory maximum and then accepted the Government's recommendation (promised in the parties' plea agreement) to grant a 33% reduction in sentence based on Newman's substantial assistance to law enforcement officials. This left Newman with a sentence of forty months imprisonment, to which the district court added three years of supervised release, mandatory participation in drug rehabilitation and psychological treatment programs, and a prohibition against serving as an informant for any governmental agency.

## II.

Newman raises a number of challenges on appeal. First, he argues that the Government breached the plea agreement in two ways: by refusing (1) to move for a downward departure based on his acceptance of responsibility, *see* USSG § 3E1.1, and (2) to inform the court of the extent of his cooperation with law enforcement authorities over a period of nearly thirty years. Even though he received the 33% substantial-assistance departure that he was promised, and even though he presented all of the disputed information to the district court himself before the sentencing hearing, Newman contends that the district court might have awarded him an even greater departure if the Government had presented a full account of his assistance over the years. Second, Newman challenges the district court's determination of his criminal history category. Third, Newman contends that the district court erroneously accepted his stipulations that he defrauded Michael Aufrecht of $740,000. Fourth, and finally, he asks us to review the district court's discretionary refusal to depart on two grounds.

### A. Breach of the Plea Agreement

■ Newman's first contention concerns his downward departure for acceptance of responsibility. The plea agreement provided that "if the defendant continues to accept responsibility for his actions, within the meaning of Guideline § 3E1.1, a two-level reduction in the offense level will be appropriate." As stated earlier, Newman believes that the Government breached the plea agreement by refusing to recommend a downward departure on this basis. He did not raise this argument at the sentencing hearing, so we review his claim only for plain error. *See United States v. Szabo*, 147 F.3d 559, 560–61 (7th Cir.1998). In order to reach the level of plain error, the district court's alleged error would have to be one that "affect[s] substantial rights" and "seriously affect[s] the fairness, integrity or reputation of judicial proceedings." *United States v.*

*Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (alterations in original) (quotations omitted).

■ Newman's claim does not approach this high threshold. On one hand, the Government quite reasonably construed his *pro se* objections to the PSI—in which he denied many material facts of his specific and stipulated offense conduct—as *themselves* breaches of the plea agreement.[1] Specifically, by contravening his stipulations in the plea agreement, Newman did not adhere to his promise to "continue to accept responsibility for his actions, within the meaning of Guideline § 3E1.1." *See, e.g., United States v. Jones*, 52 F.3d 697, 701 (7th Cir.1995) (affirming the district court's denial of a § 3E1.1 departure where the defendant failed to admit the full extent of her participation in a fraudulent scheme and collecting similar cases). Once Newman breached, the Government was no longer bound to make the downward departure recommendation. *See United States v. Ramunno*, 133 F.3d 476, 484 (7th Cir.1998). On the other hand, and more fundamentally, Newman's claim lacks merit because *he received* the departure for acceptance of responsibility; his quarrel seems to be only that the Government was not the proponent of this successful motion. This is not plain error.

Next, Newman argues that the Government violated the plea agreement by failing to inform the district court of the extent of his substantial assistance to law enforcement officials. The plea agreement states:

At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation and, assuming the defendant's full and truthful cooperation, shall move the court, pursuant to Sentencing Guideline 5K1.1, to depart from the applicable sentencing guidelines range and to impose a sentence equalling sixty-six percent (66%) of the low end of the applicable guidelines range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

1. The plea agreement states: "Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement."

Newman compiled a staggering record of assistance that spanned many states and almost thirty years. Indeed, one might surmise that Newman's primary occupation for the last thirty years was infiltrating criminal syndicates on behalf of the Government. It was this extended involvement that led the district court to impose a special condition on Newman's supervised release: no further service as an informant or "cooperator" for any government agency.

■ Newman did not give the Government an opportunity to fulfill its promise in this regard. The plea agreement obligated the Government to inform the court of Newman's assistance "[a]t the time of sentencing." Yet, two months prior to the sentencing hearing, he submitted his own memorandum in support of a § 5K1.1 departure. An extensive discussion of his long record of assistance to the Government was attached as an exhibit to this memorandum. It is hard to imagine anything that the Government could have added to this list at the sentencing hearing. Indeed, the Government basically adopted this description; the PSI simply referred the Court to Newman's submission as the authoritative statement of his "extensive cooperation."

■ In compliance with the plea agreement, the Government moved for a § 5K1.1 departure of 33% from the low end of the Guideline-mandated sentence. Newman, though, asked the court to grant an even more significant departure.[2] The district court granted the Government's motion for a 33% departure but only with great pause:

I have had some problem in my own mind reconciling any departure in this case, let alone some departure that was past that which the government was willing to offer. And the reason why should be obvious to you all.... [M]r. Newman has a history where at least on one or more—at least one and maybe more occasions has had a significant benefit conveyed upon him because he was, quote, cooperating with the government. · That's what the Presentence Investigation reveals to me. But yet, having been the beneficiary of that governmental largess, he has gone on to commit this scam which with other relevant conduct approaches at least two and a half million and maybe three million bucks.... I will go along with the recommendation of the government, but I will say to you that I do it reluctantly. As a matter of fact, I think it's more accurate· to say that I do it most reluctantly. He got a king-size break in the beginning on how he was charged with this thing and, therefore, I will depart, but only to the extent that has been recommended by ·the government and no further, and then very reluctantly.

Newman's claim of a breach regarding his substantial assistance departure suffers many of the same defects as his other breach argument. As a threshold issue, he failed to raise this claim at sentencing, so we again evaluate his argument under the plain error standard.[3] See Olano, 507 U.S. at 732, 113 S.Ct. 1770. Furthermore, Newman essentially mooted any obligation that the Government might have had in this regard by filing

---

2. Newman asks us to review the extent of the § 5K1.1 departure granted by the district court. Thirty-three percent, according to Newman, does not adequately reflect his degree of cooperation with law enforcement officials. The sentencing hearing transcript reprinted *infra* demonstrates that Newman was lucky to get even this departure. Regardless, we lack jurisdiction to review the extent of the district court's discretionary ·departure under § 5K1.1. *See United States v. Thomas*, 11 F.3d 732, 737 (7th Cir.1993), *cert. denied*, 513 U.S. 960, 115 S.Ct. 419, 130 L.Ed.2d 334 (1994).

3. Near the end of the sentencing hearing, the district court denied Newman's motion for a downward departure based on diminished mental capacity. Before the hearing concluded, in allocution, Newman's counsel asked only that the

district court send Newman to a drug treatment facility in South Dakota. Judge Marovich asked Newman if he had anything to add, and Newman made some statements from which a common theme is difficult to discern: "I don't want to get into a lengthy dissertation. I don't feel what the government promised they fulfilled on. I feel my conduct was in error, but you don't believe in my state of mind that I was ill, and I am now calmer because of my medication, so I will just go deal with my punishment and my time." Neither Newman nor his attorney ever reiterated or developed this protest regarding the Government's failure to fulfill its promises. We do not believe—based on the lack of specificity, as well as the timing and context of the protest—that· this offhand remark preserved the issue for appeal.

a detailed account of his assistance prior to the sentencing hearing. He cannot point to any facts that the Government could have offered that he did not already present to the district court; the Government did not attempt to undermine the validity of the facts contained in Newman's memorandum. Finally, in the face of the district court's reluctance to award *any* departure under § 5K1.1, it is difficult for Newman to argue that the district court would have granted a *greater* departure if the Government had more actively informed the court of the extent of his substantial assistance. Given that the court made these statements after actually considering all of the facts that Newman claims that the Government should have offered, the argument is meritless. Simply put, Newman's second alleged breach of the plea agreement, like his first, does not approach the level of plain error.

### B. Criminal History Category

■ Newman's second set of challenges relates to the district court's computation of his criminal history category. He argues first that the district court made an erroneous factual finding regarding his probationary status at the time he committed the charged offense. Newman was on probation in Louisiana in March 1990, and he stipulated in the plea agreement that the charged conspiracy operated from March 9, 1990 until August 31, 1992. Under USSG § 4A1.1(d) & (e), therefore, the district court added three criminal history points because Newman committed the charged offense while on probation and within two years of release from a term of imprisonment. Newman argues that the conspiracy did not actually commence until long after March 1990, but his contrary stipulations in the plea agreement waive this challenge.

■ Normally, we would review a sentencing court's factual findings such as this for clear error. *See United States v. Agostino,* 132 F.3d 1183, 1196 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). In this case, however, we need not go that far because the entire challenge is precluded by Newman's stipulations. The Government filed an informa-

tion—to which Newman entered a guilty plea-that explicitly described the charged conspiracy as extending from March 1990 through August 1992. The plea agreement repeats this factual assertion almost verbatim from the information. The agreement also extensively details the dates and dollar amounts involved in each of the eight fraudulent acts committed by the conspiracy; this series of dates begins with March 9, 1990 and ends with a discussion of the final transaction on August 31, 1992. These details occupy two of the fifteen-and-a-half total pages of the agreement. By stipulating to the conduct listed in this plea agreement, Newman conclusively admitted those facts and waived any subsequent challenge to them. *See, e.g., Young v. United States,* 124 F.3d 794, 797 (7th Cir.1997); *Stanback v. United States,* 113 F.3d 651, 654 (7th Cir.1997); *Lee v. United States,* 113 F.3d 73, 75 (7th Cir.1997); *see also United States v. Flores–Sandoval,* 94 F.3d 346, 349 (7th Cir.1996) ("[B]y stipulating to the conduct in the plea agreement, *Flores* has waived any claim that he did not engage in that conduct."). Despite Newman's objections to the offense conduct as described in the PSI (which reiterated the facts to which Newman stipulated in the plea agreement), the district court credited his stipulations, as well as an admission in an interview with FBI agents (in the presence of his lawyer) that the conspiracy operated from 1990 to 1992. The court did not even need to take the step of making a formal finding, though, because Newman's stipulations constituted binding admissions on this question that precluded further challenge. Thus, the addition of three criminal history points under USSG § 4A1.1 (d) & (e) was appropriate.

■ Second, Newman claims that the district court erroneously added three points for a federal drug conspiracy conviction in 1972 because he states that the offense was committed before his eighteenth birthday in 1968. He raises this claim for the first time on appeal, so we review the district court's calculation for plain error. *See United States v. Morgano,* 39 F.3d 1358, 1369 (7th Cir.1994), *cert. denied,* 515 U.S. 1133, 115 S.Ct. 2559, 132 L.Ed.2d 813 (1995). The PSI lists Newman's date of birth as March 13,

1951, and he was arrested on the federal drug conspiracy charge on April 7, 1970. At the time of this arrest, he had already been arrested and sentenced for a similar offense in Cook County state court in 1969. The only evidence in support of his assertion that the federal offense occurred before Newman's eighteenth birthday came from an unsworn letter from a former DEA agent who recalled investigating Newman "during 1968"; the letter does not say whether that investigation led to Newman's federal arrest in 1970, whether the investigation resulted in the 1969 arrest and conviction, or any other details crucial to support Newman's claim. The district court therefore did not plainly err in refusing to credit Newman's unsubstantiated contention that the offense leading to his 1970 federal arrest occurred prior to March 13, 1969.

■■■■■ Third, Newman contends that the district court erred by assessing two criminal history points for two consolidated state convictions in 1983. He claims that the court should have only imposed one point because he allegedly served 30 months of probation, but no term of imprisonment, on the two convictions. *See* USSG § 4A1.1(c) (assigning one point for prior prison sentences of less than sixty days); USSG § 4A1.2, comment. (n.2) ("To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence.... A sentence of probation is to be treated as a sentence under § 4A1.1(c) unless a condition of proba-

tion requiring imprisonment of at least sixty days was imposed."). We review Newman's claim for clear error because he made this objection at the sentencing hearing. *See Agostino*, 132 F.3d at 1196. Newman, however, did not substantiate his protest that he never served jail time on the 1983 convictions. In contrast, the PSI reported that Newman's sentence on these convictions was six months imprisonment and thirty months probation. At the sentencing hearing, the district court relied on a certified copy of the 1983 convictions, which called for a six-month term of imprisonment, and rejected Newman's uncorroborated claim to the contrary. Based on this evidence, the district court did not clearly err by finding that Newman actually served sufficient jail time on the 1983 convictions to warrant the addition of two criminal history points for these convictions pursuant to § 4A1.1(b).[4]

## C. Loss Calculation

■■■■■ Newman waived his earlier claim regarding the conspiracy's dates of operation by stipulating to the matter in his plea agreement. Similarly here, Newman attacks the factual basis of the district court's finding of the amount of loss associated with his specific offense conduct and stipulated offense conduct.[5] Based on this factual finding, the court imposed a thirteen-level increase in Newman's offense level pursuant to USSG § 2F1.1(b)(1)(N).[6] Newman argues that, if the district court had credited his arguments regarding the loss incurred by Michael Au-

4. The district court calculated Newman's criminal history category as six based upon his fourteen criminal history points. Even if the district court erroneously concluded that Newman served jail time on the 1983 convictions, he would still be left with thirteen criminal history points—enough to yield a criminal history category of six. Thus, any error the district court may have made on this point would have been harmless. *See* Fed.R.Crim.P. 52(a).

5. On appeal, Newman also claims that the district court violated Federal Rule of Criminal Procedure 32(c) by failing to resolve the disputed loss figure question. On the contrary, we interpret the district court's remarks as an acceptance of Newman's low proposed figures (to which he did not object or otherwise seek to clarify) because-regardless of which figures were used—the same base offense level would result.

6. The court purported to use Newman's own proposed figures in calculating a total loss of $2,776,972. The loss figures utilized by the district court were $1,443,000 for St. Francis Hospital, $550,089 for American Midwest Bank, and $783,083 for Michael Aufrecht. The record does not reveal the method of computing these amounts. Even using Newman's own figures, the court stated, the total amount of loss exceeded the $2.5 million threshold for a thirteen level increase under USSG § 2F1.1(b)(1)(N). Newman did not object to the use of these numbers, but it appears that the figures he now proposes would indeed push him below the $2.5 million level. This is irrelevant, though, because Newman stipulated to an even higher amount, as discussed *infra*.

frecht, the increase would have been only twelve levels. Normally, an amount-of-loss calculation would be a factual finding subject to clear error review, *see supra* at 876, but Newman stipulated to these challenged facts in the plea agreement and cannot now contest them. *See Flores–Sandoval,* 94 F.3d at 349 (holding that the defendant waived any challenge to stipulated facts in the plea agreement, in which he "acknowledge[d] that for the purpose of computing his sentence under the U.S. Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Section 1B1.3 of the guidelines").[7] Indeed, Newman stipulated to a loss amount even greater than the one utilized by the district court. In the plea agreement, Newman admitted that he embezzled $1,495,000 from St. Francis Hospital; the agreement then details each of the eight fraudulent transactions—listing every date and dollar—that comprised the specific offense conduct. He also stipulated to causing losses to American Midwest Bank totalling $715,000 and to Michael Aufrecht in the amount of "approximately $740,000." The total amount of loss in the plea agreement was $2,950,000. Moreover, Newman promised in the plea agreement to make restitution to his victims in the following amounts: St. Francis Hospital—$1,495,000; American Midwest Bank—$715,000; Michael Aufrecht-$740,000.[8] Newman now claims that the loss sustained by Aufrecht was in fact much lower than $740,000, but he has waived this claim by his stipulations in the plea agreement. We will not, therefore, disturb the district court's factual finding and base offense level calculation in this matter.

### D. Exercises of Discretion

■ Finally, Newman asserts that the district court should have exercised its discretion to grant two downward departures. First, the court rejected his request for a departure based on his diminished mental capacity pursuant to USSG §§ 5H1.3 & 5K2.13. The district court, after considering Newman's argument on this point, did not find that his recently diagnosed condition of bipolar disorder warranted a departure. Newman concedes that the court did not mistakenly perceive a limitation on its ability to depart. Rather, the court did not find his factual support for the motion to be persuasive. In such circumstances, we lack jurisdiction to review the district court's exercise of its discretion. *See, e.g., United States v. Schechter,* 13 F.3d 1117, 1120 (7th Cir.1994) (holding that the court lacked jurisdiction to review a discretionary refusal to grant a downward departure pursuant to USSG § 5K2.13).

■ Second, Newman contends that he was entitled to a departure based on his minor role in the charged offense. See USSG § 3B1.2(b) ("If the defendant was a minor participant in any criminal activity, decrease by 2 levels."). The district court never had a chance to consider this proposed departure because Newman expressly waived the claim. After the court had made a number of findings relating to Newman's criminal history points and base offense level, Newman's sentencing range already exceeded the sixty-month statutory maximum penalty. Continued elevation of the sentencing range would therefore have had no additional impact on Newman's sentence, although Newman certainly retained the right to a judicial determination on all of his claims of error. Judge Marovich asked the parties at this point, in light of the sixty-month maximum penalty, "Is there any need to go further with this exercise?" Newman himself answered "No," and the court then stated: "Just because it is agreed that there is no need to go further, I will not go further and I suppose it is appropriate to make a finding that we are at least at a Level 18, Criminal History 6, which is 57 to 71 months." The

---

7. Newman's plea agreement introduced his stipulations with exactly the same language as did the plea agreement in *Flores–Sandoval:* "The defendant also acknowledges that for the purpose of computing his sentence under the U.S. Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Section 1B1.3 of the Guidelines."

8. At the sentencing hearing, however, the district court declined to order restitution based on Newman's inability to pay. *See* 18 U.S.C. § 3663(a)(1)(B)(i)(II) (1994), *amended by* 18 U.S.C. § 3663A(f)(1)(A) (Supp.1996).

court asked again whether Newman was satisfied that his sentence was computed "by the numbers as we are required to do." Newman's counsel agreed with the district court's computations and answered, "Your Honor, we feel there is no need to do any further calculation."

The Supreme Court has explained that a "waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quotation omitted). Waiver differs from forfeiture, which is merely the failure to make a timely assertion of a right. *Id.* at 733–34, 113 S.Ct. 1770. Unlike forfeiture, which permits review for plain error, waiver extinguishes appellate review because "there is technically no 'error' to correct." *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733, 113 S.Ct. 1770). Newman's decision to forego further judicial resolution of his remaining contested arguments—including the propriety of a minor role adjustment—constituted a waiver of those claims. He knew that he had a right to further judicial determinations, but he intentionally chose to relinquish that right. He cannot now resurrect the waived claim to a minor role departure.[9]

### III.

For all of the foregoing reasons, we affirm Newman's sentence.

**9.** We also reject Newman's argument that the district court violated Federal Rule of Criminal Procedure 32(c) by failing to make a finding on each contested issue at sentencing—including the minor role adjustment. Newman may not waive resolution of his remaining claims of error and then argue that he should be resentenced because the district court accepted his waiver.