**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Abiodun OSIGBADE, Defendant–Appellant.**

No. 99–1110.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1999.

Decided Oct. 26, 1999.

Lori Lightfoot, Office of the U.S. Attorney, Civil Division, Chicago, IL, for plaintiff-appellee.

James D. Tunick, Hill & Associates, Chicago, IL, for defendant-appellant.

Before FLAUM, MANION, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Abiodun Osigbade appeals his conviction for knowingly possessing with intent to distribute heroin in violation of 21 U.S.C. § 846, claiming that the district court's mistaken dismissal of a venire person and potential juror denied or impaired his Fifth Amendment due process right to intelligently exercise his peremptory challenges. We disagree, and for the reasons set out below, affirm the decision of the district court.

## I. Facts

On July 6, 1998, the United States District Court for the Northern District of Illinois began jury selection for the trial of Abiodun Osigbade. The court employed a variation of the "struck jury" selection system, whereby both sides questioned the entire venire and challenged for cause any individual prospective juror to whom they objected. After the challenges for cause were completed, the parties submitted a list of peremptory challenges to the court. The court then reviewed the peremptory challenges and compiled the list of jurors, including alternates, for the trial.

Once the jury list was completed, the court entertained *Batson* challenges from the defense. Following these challenges, the court read off a list of the jurors selected and requested that those jurors file into the jury box. At that point it was brought to the attention of the court that one of the jurors on the list, Ms. Greta Stahl, had already been excused for cause. In order to fill the slot on the jury created by Ms. Stahl's absence, the court called the next juror on the list to whom no one had objected, Ms. Myrtle Lewis.

While the court waited for Ms. Lewis to return to the courtroom, the defense raised a *Batson* challenge to the exclusion of an African–American venire person, Ms. Rhoda Richardson, from the jury. The government responded that it had not struck Ms. Richardson. It then became apparent that Ms. Richardson had been excused through an error of the court. Had the court not mistakenly excused Ms. Richardson, she would have been a member of the petit jury by virtue of being among the first twelve people in the venire not challenged by either the government or the defense.

The court first attempted to rectify its mistaken dismissal of Ms. Richardson by having her recalled for service. Ms. Richardson had already left the building, however, and could not be contacted. Having failed in this effort to call back Ms. Richardson, the court decided to replace her on the jury with Ms. Lewis. In an attempt to alleviate the defendant's concerns about the racial composition of the jury in the absence of Ms. Richardson, the court decided to elevate Ms. Lewis, who was originally to serve as an alternate and who, like Ms. Richardson, is African–American, to a position on the petit jury.

At this point, the defendant immediately moved for a mistrial. The court rejected the defendant's motion, and gave him the choice of either elevating Ms. Lewis to the petit jury or proceeding with the jury as presently constituted. Faced with this option, the defendant chose to include Ms. Lewis on the petit jury. The government then voiced its objection to the proposed procedure, arguing that Ms. Lewis could not be elevated to a position on the petit jury on the basis of her race. The court rejected this objection and called a short recess.

After the court returned from recess, the government renewed its objection to the procedure being employed by the court. The government suggested that either the court delay trial until Ms. Richardson could be recalled or that a new jury be selected. The defendant refused to comment on either of the government's proposals, but he did renew his objection to the exclusion of Ms. Richardson from the jury.

Despite the objections of both the defendant and the government, the district court refused to grant a mistrial, delay the trial until Ms. Richardson could be recalled, or begin jury selection anew. The court recognized its error in dismissing Ms. Richardson, but found that the defendant had suffered no prejudice as a result of that mistake. The case proceeded to trial with Ms. Lewis serving on the petit jury in Ms. Richardson's stead, and the defendant was convicted. The defendant now appeals that conviction, arguing that he should be granted a new trial because the actions of the district court denied or impaired his Fifth Amendment due process right to intelligently exercise his peremptory challenges.

## II.  Analysis

### A.

Before turning to the issue of defendant's right to exercise his peremptory challenges, we must first resolve the question of waiver. The government contends that the defendant has waived his right to request a new trial in two ways: (1) by agreeing to the district court's proposal that Ms. Lewis be seated on the petit jury in place of Ms. Richardson; and (2) by objecting to the government's proposed solutions of either recalling Ms. Richardson or starting the jury selection process anew.

■ In order for us to find that the defendant waived his right to a new trial, we have to conclude that his actions clearly constituted an "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Ross*, 77 F.3d 1525, 1541 (7th Cir.1996) (citing *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). If such a waiver did occur, we would be precluded from considering the defendant's request for a new trial since "waiver extinguishes appellate review." *United States v. Newman*, 148 F.3d 871, 879 (7th Cir.1998) (citing *Ross*, 77 F.3d at 1542) (citing *Olano*, 507 U.S. at 733, 113 S.Ct. 1770).

■ After a careful review of the record in this case, we cannot conclude that waiver occurred here. Defense counsel accepted the seating of Ms. Lewis only after it became clear that Ms. Richardson was not going to be seated. While it is true that under certain circumstances the defen-

dant's consent to proceed with Ms. Lewis on the jury could constitute waiver, this would only be true if the defendant had been given the option of a new trial and had chosen to proceed with Ms. Lewis on the jury instead. *See United States v. Josefik,* 753 F.2d 585, 588 (7th Cir.1985) (noting that waiver would apply if the defendant chose "to take his chances with the jury in its reconstituted form *rather than* undergo the expense and uncertainty of a new trial") (emphasis added). Here, where the possibility of a new trial was specifically rejected by the district court, the defendant had no way of knowing that his assent to the judge's proposal to include Ms. Lewis on the petit jury would constitute waiver. *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Under these circumstances, the defendant's decision to accept Ms. Lewis is not an intentional abandonment of a known right, and should not preclude defendant from requesting a new trial on appeal. *See U.S. v. Griffin,* 84 F.3d 912, 924 (7th Cir.1996) ("[W]aiver must ... arise out of voluntary affirmative conduct.").

■ Nor can defendant's objection to remedies proposed by the government, which were never accepted by the district court, constitute waiver. The defendant was under no obligation to accept the solutions proposed by the government, and nothing in the transcript indicates that the issue of his right to a new trial was placed squarely before him. Absent some evidence in the record that defendant intentionally abandoned his right to a new trial, no issue of waiver is presented. *See id.*

Our conclusion that the defendant did not waive his right to a new trial is bolstered by, and consistent with, defense counsel's repeated objections to the district court's handling of this matter and his consistent and express refusal to waive such objections. Defense counsel's objections properly put the mistaken dismissal of Ms. Richardson before the trial court and gave that court the opportunity to address the situation. *See Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir.1999) (noting that objections function to "alert the judge at critical junctures so that errors may be averted"). It is difficult to imagine what else the defendant could have done to ensure that the issue of Ms. Richardson's exclusion was preserved for appeal. Having concluded that there was no waiver in this case, we proceed to consider the effect of the district court's actions on the defendant's right to intelligently exercise his peremptory challenges.

### B.

■ The parties dispute the standard by which we should review the district court's mistaken dismissal of Ms. Richardson. The defendant contends that the actions of the district court denied or impaired his right to exercise his peremptory challenges. If so, those actions are grounds for automatic reversal. *See United States v. Underwood,* 122 F.3d 389, 392 (7th Cir.1997) (holding that automatic reversal, rather than harmless error analysis, is appropriate "where a defendant's statutory right to peremptory challenge has been denied or impaired"). On the other hand, the government contests defendant's assertion that his right to exercise his peremptory challenges was denied or impaired. If that right was not denied or impaired, then automatic reversal is not applicable here, and we would subject the district court's mistake to harmless error review. *See Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The initial issue, then, is whether the actions of the district court did constitute a denial or impairment of the defendant's right to exercise his peremptory challenges.

In arguing that the mistaken dismissal of Ms. Richardson entitles him to automatic reversal of his conviction, the defendant

relies heavily on our prior opinion in *Underwood*, 122 F.3d 389. In *Underwood*, we recognized that the right to exercise peremptory challenges is " 'one of the most important of the rights secured to the accused.' " *Id.* at 392 (quoting *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (quoting *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894))). We went on to note that because of the importance of the right to exercise peremptory challenges, automatic reversal is justified when "defendants [are unable] to intelligently exercise the peremptory challenges to which they [are] entitled." *Underwood*, 122 F.3d at 392. We also clearly stated, however, that not every mistake related to the right to exercise peremptory challenges constitutes the denial or impairment of that right. *See id.* at 392; *see also United States v. Farmer*, 924 F.2d 647, 653 (7th Cir.1991) (holding minor confusion over jury selection procedure did not deprive defendants of "the meaningful use of their peremptory challenges").

For the purposes of this case, it is our recognition in *Underwood* that some mistakes related to jury selection do not justify automatic reversal, as well as our understanding of the holding in that case, which are most instructive. In *Underwood*, we were openly concerned about the scope of the right to automatic reversal, and went to great lengths to ensure that the opinion was not read too broadly. *See Underwood*, 122 F.3d at 398 (Flaum, J., concurring) ("I would not employ this case to endorse a broad rule of automatic reversal, applicable whenever a defendant has suffered an infringement of his right to exercise peremptory challenges."); *id.* at 392–93 n. 3 ("We share Judge Flaum's concern ... about 'a broad rule of automatic reversal.' "). We even went so far as to suggest ways in which the sweep of the *Underwood* opinion could be limited, noting that the phrase "denial or impairment" could be read narrowly. *Id.* at 393 n. 3.

We are convinced that defendant's construction of the *Underwood* right is overly broad, and that automatic reversal is not justified in this case. The *Underwood* case involved a situation where, because of defense counsel's reasonable misunderstanding of the jury selection procedure, the defendants chose not to challenge two potential jurors defense counsel felt were too far down on the jury list to make it to the petit jury. *Id.* at 395. These two jurors were actually, however, among the first twelve jurors on the list and were eventually seated. *Id.* While we felt that the situation presented in *Underwood* resulted in a complete subversion of the defendants' right to exercise their peremptory strikes intelligently, *id.* at 396, the present case stands in marked contrast. Here, the defendant was allowed to exercise his full allotment of peremptory challenges, and no one was seated over his objection. More significantly, there is no evidence that the mistaken dismissal of Ms. Richardson resulted in anyone being seated on the petit jury to whom the defendant would have objected, or that defense counsel would have exercised his strikes any differently in the absence of that dismissal. Because the actions of the district court did not subvert the defendant's ability to exercise his peremptory challenges intelligently, a standard of automatic reversal is not appropriate in this case. *See id.* at 392. In light of this conclusion, we proceed to review the actions of the district court under the harmless error standard. *See* Fed.R.Crim.P. 52(a).

### C.

It is undoubted that the mistaken dismissal of Ms. Richardson was unfortunate and resulted in the exclusion of a potential juror whom the defendant wanted on the jury. In order to show that this mistake was not harmless error, however, the defendant must show that he was prejudiced by Ms. Richardson's dismissal. *See Olano*, 507 U.S. at 734, 113 S.Ct. 1770. A

showing of prejudice requires that the defendant demonstrate that the mistaken dismissal of Ms. Richardson affected the outcome of the trial. *United States v. Stefonek,* 179 F.3d 1030, 1036 (7th Cir. 1999) ("A 'harmless error' as the term is used in law is a trial error that does not alter the trial's outcome."). In this case, the defendant has made no such showing.

The defendant does not argue prejudice in his brief, and such an omission is understandable. There is simply nothing in the record to indicate that the trial would have been different had Ms. Richardson been a member of the petit jury, nor is there anything to indicate that Ms. Lewis's presence on the jury was adverse to the defendant. The defendant does note that Ms. Richardson was an important juror to the defense, but such an allegation is insufficient to show prejudice. The defendant was only guaranteed " 'a fair trial, not a perfect one.' " *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (citations omitted). However much defendant may have desired to have Ms. Richardson serve on the jury, the defendant was " 'not entitled to a jury of any particular composition.' " *United States v. Duff,* 76 F.3d 122, 125 (7th Cir.1996) (quoting *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). Absent a showing that the errors of the trial court resulted in prejudice to the defendant, we conclude that the mistaken dismissal of Ms. Richardson constitutes harmless error.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court below.

AFFIRMED