**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Antonio COBB, Defendant–Appellant.**

**No. 03–1605.**

United States Court of Appeals,
Seventh Circuit.

Argued July 9, 2003.

Decided July 15, 2003.

---

807

Before BAUER, COFFEY, and MANION, Circuit Judges.

## ORDER

A jury found Antonio Cobb guilty of one count of distributing fifty grams or more of cocaine base (crack); the district court sentenced him to life imprisonment because he had two prior felony drug convictions. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A). He appeals, arguing that the district court wrongly allowed a cooperating witness to testify at trial regarding prior drug deals with Cobb, and that the evidence was insufficient to support his conviction. We affirm.

After his third crack sale to a confidential informant, Anthony Mack was arrested on March 26, 2002, by officers from the Peoria, Illinois, police department and the DEA. Mack promptly flipped on his supplier, providing his name ("Tony") and offering to take the police to a pre-arranged drug deal that very night. The officers accepted the offer, and Mack tried but failed to reach "Tony" on his cell phone. A few minutes later, however, "Tony" called back to confirm that the deal was set for somewhere in Bloomington, Illinois. Within hours of this call, the authorities had "Tony" Cobb in custody.

At Cobb's trial, the government's witnesses–including Mack and a collection of police and DEA agents–testified regarding the events leading to Cobb's arrest. Mack had traveled with agents from Peoria to Bloomington in an undercover vehicle, stopping at a gas station to call "Tony" and arrange the meeting place. Although Mack had thought the sale would occur in

the parking lot of a Famous Dave's restaurant–the site of some previous sales– "Tony" asked that Mack meet him "the last place we was at." Mack understood that to mean a Jewel–Osco parking lot; government agents scrambled to set up the necessary surveillance. Some arrived before Mack, and observed a white Nissan Altima circle through the lot and leave just prior to Mack's arrival. The Altima returned shortly, and the driver parked immediately next to the car in which Mack sat. Carrying nothing but $3500 in buy money (he'd been searched beforehand), Mack got out of the agent's car and into the Altima. Within moments, he re-emerged and gave the bust signal. Agents converged on the Altima from their surveillance points and, according to Mack and one of the agents, the Altima's driver handed the buy money back to Mack through the driver's side window, exclaiming, "Oh, I thought those were the motherfucking people," or words to that effect. The driver–Cobb–was arrested and charged with distributing the 4.5 ounces of crack that agents recovered from Mack's pocket and which Mack claimed was sold to him during his brief sojourn in the Altima.

Mack also testified regarding his and Cobb's prior drug deals, averring that he had bought crack from Cobb numerous times over several months, usually in a parking lot while seated in Cobb's car. The transactions invariably lasted just a few moments because the duo pre-arranged the price and weight of the drugs purchased. This testimony was the subject of pretrial sparring between the parties. The defense initially contended that its introduction at trial would contravene Federal Rule of Evidence 404(b), which precludes using evidence of "prior bad acts" to prove that the defendant generally acts badly and thus acted badly on the occasion charged. The government rejoined that the testimony was, *inter alia*, necessary "to complete the story of the crime": the evidence explained, for example, how Mack knew that "the last place we was at" meant the Jewel–Osco parking lot. At a pretrial hearing on the issue, defense counsel conceded the propriety of the government's proposed use of the testimony, announcing that:

> [A]fter looking at the prosecution's position, the position that I have is now this. I now clearly understand what it is the prosecution will be seeking to introduce from Mr. Mack in regard to the prior association and relationship between the two men. I cannot think of a viable argument to make that would persuade this Court that you should preclude Mr. Mack from being put on to testify about that relationship . . . .

The district judge agreed that the testimony was admissible, and during trial the defense did not reassert any objection to its use.

On appeal, Cobb through new counsel first argues that the district court improperly admitted Mack's testimony regarding Cobb's prior drug deals. But as the government contends, this argument was waived by the just-quoted concession that there was no "viable argument" for the testimony's exclusion. Waiver occurs where there is an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citations and quotations omitted). Unlike forfeiture, waiver extinguishes error; an argument waived is unreviewable on appeal. *See id* at 732–34, 113 S.Ct. 1770. Therefore, because Cobb's trial counsel knew that Rule 404(b) potentially excluded evidence regarding Cobb's prior drug sales but voluntarily relinquished the point, appellate review of the issue is precluded. *See, e.g., United States v. Cooper*, 243 F.3d

411, 415–16 (7th Cir.2001) (holding that defendant waived objection to admission of evidence where counsel withdrew motion in limine and referred to evidence at trial); *United States v. Richardson,* 238 F.3d 837, 841 (7th Cir.2001) (holding that defendant waived objection to sentencing adjustment when court asked defendant's lawyer whether he had objection to adjustment and lawyer said "No"); *United States v. Newman,* 148 F.3d 871, 878–79 (7th Cir. 1998) (holding that defendant waived arguments by stipulating to facts and by expressly declining to press contentions).

■ Defense counsel was in any event correct to concede: the argument that the district judge abused its discretion by admitting evidence of Mack and Cobb's prior dealings is meritless. *See United States v. Thompson,* 286 F.3d 950, 968 (7th Cir. 2002) (admission of prior-acts evidence reviewed for abuse of discretion). That's because making sense of the deal on the 26th required knowledge of Mack and Cobb's standard operating procedures; their prior dealings were in other words "intricately related" to their activities on the 26th, completing the story and filling in "chronological or conceptual void[s]." *United States v. Ramirez,* 45 F.3d 1096, 1102 (7th Cir.1995) (citations and quotations omitted); *see also Thompson,* 286 F.3d at 968–69. Without Mack explaining that he and Cobb had by the 26th standardized their deals ($3500 for 4.5 ounces of crack approximately every two weeks), the jury would have been unable to understand how they coordinated without discussing the exact terms of sale. Likewise, the government needed to explain the perhaps surprising brevity of the duo's midnight meeting–the product of a months-long professional relationship in which weighing or counting was unnecessary because shortfalls in either drugs or money could be recouped next transaction. Such

intricately related facts, offered to explicate the crime itself rather than to establish the defendant's bad character, are beyond the purview of Rule 404(b). *See id.*

Cobb next contends that the government's evidence was insufficient to convict him. The fact of conviction, however, establishes that the jury believed Mack's testimony that Cobb sold him crack on the 26th; this testimony was corroborated by DEA agents and police officers. The conviction also proves, conversely, that the jury disbelieved the defense theory of the case, which was that Mack–through Machiavellian cunning, preternatural foresight, or simple luck–set Cobb up by stashing 4.5 ounces of crack in Cobb's car a few days before their mutual arrests. The jury was entitled to weigh the credibility of the witnesses supporting these competing theories and to choose between them; we will not disturb that choice absent extraordinary circumstances not present here. *See United States v. Scott,* 284 F.3d 758, 761 (7th Cir.2002) (court defers to jury's credibility determinations); *United States v. Irorere,* 228 F.3d 816, 822 (7th Cir.2000) ("Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." (internal quotations omitted)).

AFFIRMED.