FILED
United States Court of Appeals
Tenth Circuit

February 22, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

THADAUS JACKSON,

     Defendant-Appellant.

No. 11-1034
(D.Ct. No. 1:10-CR-00227-REB-1)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]

Before **PORFILIO**, **ANDERSON**, and **BRORBY**, Senior Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Appellant Thadaus Jackson pled guilty to one count of mail fraud in

violation of 18 U.S.C. § 1341. The district court sentenced her to thirty-three-

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

months imprisonment and three years of supervised release and ordered her to pay restitution to her victims in the amount of $1,948,069.30. Ms. Jackson now appeals, contending the district court committed procedural and substantive errors in calculating her sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Ms. Jackson's sentence.

I. Factual and Procedural Background

From June 2004 to December 2006, while working as a real estate agent for her own company, Colorado Choice Properties, and as a mortgage broker for certain brokerage companies, Ms. Jackson participated in a fraudulent mortgage loan scheme with her client and later employee, Vicki Dillard Crowe. Together, they used false pretenses and fraudulent documents to obtain mortgage loans in the name of Mrs. Crowe or her husband on at least nineteen residential properties in the Denver, Colorado metropolitan area. While we need not recount the entire mortgage fraud scheme, an overview of the scheme as follows is necessary for the purpose of addressing the issues raised on appeal. The facts on which we rely were stipulated to and agreed on by Ms. Jackson in her plea agreement.

In order to qualify for the mortgage loans at issue, Ms. Jackson and Mrs. Crowe falsified loan applications and other documents by providing fictitious job titles for Mrs. Crowe, withholding disclosure of her previously purchased

-2-

properties, and inflating or fabricating the employment income, rental income, and/or assets of Mrs. Crowe and her husband. The scheme began when Mrs. Crowe purchased her first property and obtained both first and second mortgage loans; Ms. Jackson knew Mrs. Crowe falsely stated she was employed at that time and earned $4,166.66 a month, even though she was actually unemployed and earned substantially less than $4,166.66 at her previous job. Ms. Jackson nevertheless agreed to use the false information in order for Mrs. Crowe to qualify for the requested mortgages. Although Mrs. Crowe eventually obtained employment with Ms. Jackson doing limited administrative-level duties, such as answering the phones and running errands, she and Ms. Jackson continued to obtain loans for the other properties using false information and documentation, including false titles for her position, such as "branch relocation manager," and falsely reporting her salary as ranging anywhere from $7,800 to $51,994 per month.

In purchasing the homes at issue, Mrs. Crowe obtained 100% financing through eighteen banks or other mortgage lending companies. In order to obtain a profit on the homes purchased, Mrs. Crowe took out loans above the selling price under the guise of remodeling the homes and submitted fraudulent invoices from remodeling companies she either controlled or which were owned by a relative of Ms. Jackson. However, Mrs. Crowe never intended to conduct any remodeling

and, instead, took the proceeds issued for such remodeling, including cashing or depositing checks written to the remodeling companies. Not only did Ms. Jackson fraudulently assist Mrs. Crowe in this scheme but she helped Mrs. Crowe refinance some of the same properties using similar false pretenses and/or fraudulent documents.

As a result of their fraudulent mortgage scheme, Mrs. Crowe collected tens of thousands dollars. In turn, Ms. Jackson collected realtor fees and broker commissions from the sale of each property as well as broker commissions for any refinancing of the properties. Ultimately, Mrs. Crowe defaulted on the loans, causing substantial financial losses to the banks and other mortgage lending companies.

On May 3, 2010, Ms. Jackson pled guilty to the information charging her with one count of mail fraud in violation of 18 U.S.C. § 1341. In her plea agreement, Ms. Jackson stipulated to the aforementioned facts and acknowledged: (1) she knew the documents connected with her fraud would be sent through the United States Postal Service, United Parcel Service, or Federal Express; (2) the victims consisted of "eighteen lending institutions" used during the scheme; (3) a two-level enhancement applied under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2B1.1(b)(2)(A) "because there were ten or more

-4-

victims"; (4) her conduct included being "accountable" for the losses associated with nineteen residential properties she helped Mrs. Crowe obtain; and (5) "the loss for which she should be held accountable could be as high as $3,208,298.57," although the parties disagreed on the exact amount of the loss. In addition, the government stated its intent to provide evidence of a loss above $2,500,000 at sentencing for an eighteen-level enhancement under U.S.S.G. § 2B1.1(b)(1).

After the district court accepted Ms. Jackson's guilty plea, a probation officer prepared a presentence report calculating her sentence under the 2009 Guidelines. The probation officer calculated Ms. Jackson's base offense level at seven under U.S.S.G. § 2B1.1(a)(1) and then applied an eighteen-level upward enhancement under § 2B1.1(b)(1) for a loss of more than $2,500,000 but less than $7,000,000, based on a calculated total loss of $3,229,354.91 attributable to Ms. Jackson.[1]

The probation officer also applied: (1) a two-level increase to the offense level under U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved ten or more victims; and (2) a three-level decrease under § 3E1.1(a) and (b) for Ms. Jackson's

_____

[1] U.S.S.G. § 2B1.1(b)(1) provides a scale to calculate the offense level increase based on the actual or intended loss; under § 2B1.1(b)(1)(I), the offense level increase is sixteen if the total loss is more than $1,000,000 but less than $2,500,0000, while § 2B1.1(b)(1)(J) provides for an offense increase of eighteen if the loss is more than $2,500,000 but less than $7,000,000.

acceptance of responsibility. A total offense level of twenty-four, together with Ms. Jackson's category I criminal history, resulted in a Guidelines range of fifty-one to sixty-three months imprisonment. The probation officer also determined Ms. Jackson should pay the sum of $3,229,354.91 in restitution, pursuant to the Mandatory Victim Restitution Act of 1996 under 18 U.S.C. § 3663A.

Following the presentence report, the government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1 based on Ms. Jackson's cooperation and assistance in the investigation and prosecution of Mrs. Crowe. In its motion, it requested the district court depart below the Guidelines range by 35% for a sentence of thirty-three to forty-one months imprisonment. In turn, Ms. Jackson filed written objections to the presentence report, contending the loss foreseeable to her should be less than $2,500,000 because of the loss in market values of the properties due to the recession. Therefore, she asserted the enhancement under U.S.S.G. § 2B1.1(b)(1) should be reduced from eighteen to sixteen levels pursuant to the sentencing factors under 18 U.S.C. § 3553(a). Ms. Jackson also objected to certain facts to which she stipulated in her plea agreement but she later retracted those same objections.

Thereafter, the government acknowledged certain errors occurred in the presentence report concerning the total loss calculations, and it submitted various

revised calculations for the purpose of determining the exact loss amount on all properties for the purposes of U.S.S.G. § 2B1.1(b)(1) as well as the restitution owed to the victim banks and lending companies, to which Ms. Jackson responded with her own calculations. Ultimately, the government calculated the net total loss for eighteen of the properties at $2,640,426.84 and the restitution owed at $1,948,069.30, while Ms. Jackson calculated each at $1,883,781.62. On the day of the sentencing hearing, the parties filed a written stipulation on the actual or intended loss amounts for each of the eighteen properties, which totaled in excess of $2,600,500 in net loss.

Following submission of these calculations, the district court held a sentencing hearing, at which Ms. Jackson objected for the first time to the two-level enhancement under § 2B1.1(b)(2)(A) for her criminal conduct affecting ten or more victims. The district court overruled her objection on both procedural and substantive grounds. Procedurally, it explained her objection was "simply not timely" as she raised it for the first time at the sentencing hearing without advance leave of the court, in violation of Federal Rule of Criminal Procedure 32. Substantively, it rejected her argument on the merits, explaining she stipulated in the plea agreement that the number of victims was eighteen and an enhancement for ten or more victims applied, and it further explained an enhancement for ten or more victims was warranted under the circumstances.

The district court also rejected Ms. Jackson's original objection that the losses caused by Mrs. Crowe's default on the loans were not reasonably foreseeable by her. In so doing, it explained:

> It was certainly foreseeable from the very first loan that Ms. Crowe, without income and employment, would have difficulty in making the monthly loan payments. A circumstance that increased arithmetically, if not exponentially, as we flowed from loan 1 through loan 19. By loan 19 it should have been obvious to Ms. Jackson that Ms. Crowe was in trouble financially. She simply didn't have the means to make the payments and that this house of cards would come crashing down.

With respect to Ms. Jackson's argument the loss attributable under U.S.S.G. § 2B1.1(b)(1) should be reduced from eighteen to sixteen levels, her counsel clarified she sought such a reduction based on the sentencing factors in 18 U.S.C. § 3553(a) and not on an objection to the actual calculation of the loss itself. Specifically, counsel argued a § 3553(a) variance was warranted because the actual loss was only "about a hundred thousand and some change over the 2.5 million" mark, and therefore the district court, in its discretion, could place Ms. Jackson in a "slightly lower level." In rejecting Ms. Jackson's request for a variance, the district court considered the sentencing factors under 18 U.S.C. § 3553(a), including her personal characteristics and lack of criminal history. However, it found no variance was warranted given Ms. Jackson committed a serious offense involving at least eighteen victims over a protracted period of

time which resulted in substantial losses in excess of $2,500,000 which she could reasonably foresee given the facts presented.  It also pointed out that restitution would be a lesser figure because certain victims entitled to restitution were no longer in business, unidentifiable, or unable to be found.

Before entering the sentence, the district court granted the government's motion to depart downward, which it found resulted in a revised Guidelines range of thirty-three to forty-one months.  After considering the sentencing factors in 18 U.S.C. § 3553(a), it determined a sentence at the bottom of the advisory Guidelines range was sufficient but not greater than necessary to achieve § 3553(a) sentencing goals.  It then sentenced Ms. Jackson to thirty-three months imprisonment and three years supervised release and ordered restitution in the amount of $1,948,069.30.

## II.  Discussion

On appeal, Ms. Jackson raises a contention her sentence is procedurally and substantively unreasonable because the district court "miscalculated the applicable guideline sections and the purposes of the sentencing statute were not served."  More specifically, she contends the district court enhanced her sentence under U.S.S.G. § 2B1.1(b)(1) and (2) based on a calculation of the loss amount and number of victims "not proven at the sentencing hearing."  In support, she

suggests the restitution figure of $1,948,069.30 was the only proven loss-related figure, stating such an amount indicates a loss between $1,000,000 and $2,500,000 under U.S.S.G. § 3B1.1 for an enhancement of only sixteen levels, rather than the eighteen-level enhancement applied. She also renews her argument that less than ten victims existed for the purposes of § 2B1.1(b)(2)(A), even though "eighteen acts accrued to calculate the loss." Ms. Jackson also points out that the district court recognized she engaged in "almost aberrant" behavior, in part, because she raised her daughter in an exemplary fashion, provided a positive support network, and had not committed any other crimes in her fifty-four years of life. Based on this and the calculation errors she claims the district court made in applying the contested enhancements, she contends her sentence is substantively unreasonable because it is contrary to the primary purposes of 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" therein.

We review a sentence for reasonableness, which "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008). In determining whether the district court properly applied the applicable Guidelines in calculating the sentence, we generally review its legal conclusions

de novo and its factual findings for clear error. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (*per curiam*). However, if a defendant fails to object to the procedural reasonableness of her sentence before the district court, we review her claim of procedural unreasonableness only for plain error. *See United States v. Romero*, 491 F.3d 1173, 1176-77 (10th Cir. 2007). In order to prevail on a plain error argument, one must show an error that is plain, which affects substantial rights, and seriously affects the fairness, integrity, or public reputation of the judicial proceeding. *See id.* at 1178.

In contrast, a challenge to the sufficiency of the district court's § 3553(a) justifications, which implicates the substantive reasonableness of the sentence, does not require a prior objection to preserve it on appeal. *See Smart*, 518 F.3d at 804-06. In reviewing a district court's sentence for substantive reasonableness under the § 3553(a) factors, we employ an abuse of discretion standard. *See id.* at 805-06. We consider "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008) (internal quotation marks omitted). If a sentence is within the correctly-calculated Guidelines range, we may apply a rebuttable presumption of reasonableness. *Kristl*, 437 F.3d at 1054-55.

In this case, Ms. Jackson is raising for the first time on appeal a procedural claim that the district court miscalculated the loss amount under § 2B1.1(b)(1), which she also contends is unsupported by the evidence. As a result, we apply plain error review. In addressing the loss amount, we look to *United States v. Washington*, 634 F.3d 1180 (10th Cir.), *cert. denied*, 132 S. Ct. 300 (2011), and *United States v. James*, 592 F.3d 1109 (10th Cir. 2010), which similarly involved mortgage fraud schemes and loss calculations. As we explained in *Washington*, Guidelines "§ 2B1.1(b) increases a defendant's base offense level for fraud according to the amount of the loss," and "[t]he court is instructed to use the greater of actual or intended loss." 634 F.3d at 1184 (relying on U.S.S.G. § 2B1.1 cmt. n.3(A)). The "Guidelines define 'actual loss' as 'the reasonably foreseeable pecuniary harm that resulted from the offense.'" *Id.* (quoting U.S.S.G. § 2B1.1 cmt. n.3(A)(I)). However, as we pointed out in *James*, "[t]he sentencing court need only make a reasonable estimate of the loss." 592 F.3d at 1114 (internal quotation marks omitted). We further explained "actual loss should be measured by the net value, not the gross value, of what was taken" when the defendant pledged collateral to secure a fraudulent loan. *Id.* (internal quotation marks omitted). As a result, in *Washington* and *James*, we held that "[w]here a lender has foreclosed and sold the collateral, the net loss should be determined by subtracting the sales price from the outstanding balance on the

-12-

loan." *Washington,* 634 F.3d at 1184 (relying on *James*, 592 F.3d at 1114).[2]

In this case, it appears the parties complied with these principles by deducting the sales price from the total mortgage loan amounts when they submitted their pleadings and stipulation on the calculated loss. The district court relied on the stipulated loss amount in concluding the total actual or intended loss amount was above $2,500,000. Because the amount is indeed over $2,500,000, the district court did not err in applying an eighteen-level enhancement under § 2B1.1(b)(1)(J).

Having determined the actual or intended net loss amount is over $2,500,000 for the purpose of an eighteen-level enhancement, we also reject Ms. Jackson's claim the evidence supports only a total loss amount of $1,948,069.30 – the same amount of the restitution award. In this case, Ms. Jackson stipulated to the actual or intended losses attributable to her under U.S.S.G. § 2B1.1(b)(1), which clearly totaled more than $1,948,069.30, as indicated above. "Generally, this court is reluctant to relieve parties from the benefits or detriments of their

_____

[2] When no actual sales price is available to calculate loss, the Guidelines permit a district court to *estimate* loss "'based on *available* information.'" *James*, 592 F.3d at 1116 (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)). Moreover, the Guidelines recommend such loss be calculated based on fair market value where no sales price is available. *See* § 2B1.1 cmt. n.3(C)(I); *United States v. Messner*, 107 F.3d 1448, 1455-56 (10th Cir. 1997).

stipulations." *Stafford v. Crane*, 382 F.3d 1175, 1180 (10th Cir. 2004) (internal quotation marks omitted). In this case, Ms. Jackson's stipulation concerning the loss amount waives any challenge contrary to the stipulation. *See United States v. Newman*, 148 F.3d 871, 877-78 (7th Cir. 1998). Moreover, calculation of the intended or actual loss amount under § 2B1.1(b)(1) is different from restitution to be paid to known lenders under the Mandatory Victim Restitution Act. This is because restitution is based on the actual loss victims suffered, while the amount of loss under § 2B1.1(b)(1) is determined using the greater of actual loss or intended loss. *See United State v. Singletary*, 649 F.3d 1212, 1220 (11th Cir. 2011). In this case, the restitution amount of $1,948,069.30, which Ms. Jackson does not contest, is based on only six identifiable victims on thirteen properties, while the actual or intended loss of the entire mortgage scheme under U.S.S.G. § 2B1.1(b)(1) is based on the total amount of losses on the eighteen properties to which the parties stipulated and totals more than $2,500,000. Finally, by stipulating to this loss amount on the day of the sentencing hearing, Ms. Jackson cannot now challenge those figures by claiming the government failed to provide evidence in support thereof at that hearing. Instead, her stipulation to the loss figures released the government from any obligation to set forth such evidence at the sentencing hearing.

At to the number of victims involved for a two-level enhancement under

-14-

U.S.S.G. § 2B1.1(b)(2)(A), Ms. Jackson raised this issue before the district court, and, accordingly, we review the district court's legal conclusions regarding the application of such an enhancement de novo and its factual findings for clear error. *See Kristl*, 437 F.3d at 1054. However, in this instance, the district court not only ruled on the merits of Ms. Jackson's objection but also found it untimely under Federal Rule of Criminal Procedure 32(i)(1)(D). *See United States v. Wise*, 597 F.3d 1141, 1143 n.3 (10th Cir. 2010) (explaining under Rule 32(i)(1)(D) the district court may for good cause shown allow parties to make a new objection before sentence is imposed), *cert. denied*, 131 S. Ct. 3020 (2011). Rule 32(i)(1)(D) gives the district court broad discretion over such matters, which we review for an abuse of discretion. *See United States v. Angeles-Mendoza*, 407 F.3d 742, 749 (5th Cir. 2005).

In this case, much like the stipulated losses, Ms. Jackson admitted in her plea agreement that the number of victims was eighteen and otherwise totaled ten or more for the purpose of applying a two-level enhancement to her sentence under U.S.S.G. § 2B1.1(b)(2)(A). We agree with the district court that such an admission is sufficient for applying the enhancement. In addition, because Ms. Jackson admitted to the number of victims in her plea agreement, the government was under no obligation to prove the number of victims before or at the sentencing hearing. Instead, it was reasonable for the government to rely on Ms.

-15-

Jackson's admission, especially given she participated in each property purchase and refinancing and knew or should have known of the number of victim lenders against whom she perpetrated her scheme at the time she entered her plea agreement.

We also conclude the district court did not abuse its discretion in determining Ms. Jackson failed to timely raise the issue. Nothing in the record indicates why she could not have raised the issue either at the time of her plea agreement or prior to the sentencing hearing. For all of these reasons, the district court correctly calculated Ms. Jackson's sentence under the Guidelines, and, under our plain error review, we hold her sentence is procedurally reasonable.

Because Ms. Jackson's sentence is within the correctly-calculated Guidelines range, we may apply a rebuttable presumption of reasonableness. *See Kristl*, 437 F.3d at 1054-55. On appeal, Ms. Jackson asserts her sentence is substantively unreasonable based, in part, on her exemplary personal characteristics, lack of criminal history, potential for rehabilitation, and the district court's miscalculation of the sentence – the latter of which we resolved as previously discussed. However, in denying a request for a variance, the district court carefully considered the 18 U.S.C. § 3553(a) sentencing factors, including her past exemplary personal characteristics and lack of criminal history.

Nevertheless, it found her offense, involving multiple victims over a protracted period of time which resulted in substantial losses in excess of $2,500,000, sufficiently serious that it did not warrant a variance but rather a sentence at the bottom of the Guidelines range, resulting in thirty-three months imprisonment. Under the circumstances presented, we conclude the district court did not abuse its discretion in imposing such a sentence and Ms. Jackson has not otherwise sufficiently rebutted the presumption her sentence is substantively reasonable.

III.  Conclusion

Accordingly, we **AFFIRM** Ms. Jackson's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge