**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard GEISLER, Defendant–Appellant.**

No. 97–3036.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1998.

Decided May 8, 1998.

---

Stuart Fullerton (argued), Office of the United States Attorney, Civil Division, Appellate Section, Chicago, IL, for Plaintiff–Appellee.

Ronald J. Clark (argued), Chicago, IL, for Defendant–Appellant.

Before FLAUM, RIPPLE, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

For a period of more than four years, Richard Geisler was involved in a romantic relationship with Tena Camille DeAcklen. During this time, the couple shared a joint bank account. Their relationship ended in early 1992, and Geisler thereafter contended that DeAcklen improperly withdrew $1,280 of his money from their joint account. DeAcklen refused to repay this money, whereupon Geisler—who is white—began sending racially-charged, threatening letters to DeAcklen—who is African–American. In the end, Geisler sent six of these hateful letters be-

tween September 1994 and January 1996. The district court convicted Geisler of six counts of mailing threatening communications with the intent to extort money in violation of 18 U.S.C. § 876.[1] We affirm his convictions.

■ Geisler stipulated at trial that he authored the letters that formed the basis for the charged offenses. There was similarly no dispute that he had sent the letters through the mails. Finally, Geisler did not—nor could he—challenge that the threats of injury and death (along with references to his "friends" affiliated with the Ku Klux Klan who might assist him in carrying out these threats) contained in these letters constituted threats sufficient to trigger § 876. Rather, his challenge on appeal focuses on the fact that DeAcklen did not *read* all of the threatening letters that he sent through the mails. Indeed, she testified that she read one letter in January 1995, as well as one or two others (she could not remember precisely), but that she turned over the other letters directly to the FBI without opening them. Geisler contends that, because DeAcklen never received the threats contained in some of his letters, he did not violate § 876 on those counts.

This argument reflects a patently incorrect interpretation of the requirements of § 876 and our Circuit's precedent, and Geisler recognizes as much.[2] Under the plain language of the statute, the Government only needed to prove that Geisler sent a communication through the mails that contained a threat to injure DeAcklen; Geisler's proposed "receipt" requirement is nowhere to be found in the statute. For this reason, we have stated repeatedly that the only two elements of a

---

1.  Section 876 reads in relevant part:

    Whoever knowingly deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service according to the direction thereon, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person ... with intent to extort from any person any money or other thing of value ... any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than twenty years, or both.

2.  At two separate points in his argument on this issue to the district court, Geisler's counsel acknowledged:
    - "[Defendant] recognizes that in order to prove up a Section 876 violation, all that is needed is the threatening communication and the mailing; it is not necessary that the intended object of the threat receive it"; and
    - "[T]he burden of the Government to prove at trial is simply that the communication was mailed and that the communication did have content in it which, by an objective standard, did constitute a communication where one could reasonably feel apprehension or fear."

§ 876 violation are (1) a threatening communication (2) sent through the mails. *See, e.g., United States v. Sullivan,* 75 F.3d 297, 302 (7th Cir.1996) ("The sending of threatening communications is a crime quite apart from any intent to carry out the threats."); *United States v. Aman,* 31 F.3d 550, 551 (7th Cir. 1994) (stating that § 876 "prohibits the mailing of threatening communications"); *United States v. Johnson,* 965 F.2d 460, 467 (7th Cir.1992) (noting that § 876 "simply requir[es] that a defendant knowingly cause to be delivered a threatening letter in the U.S. mails"). In light of the plain language of the statute, it is not surprising that other Circuits share our view that there are only two required elements of a § 876 violation. *See, e.g., United States v. Turner,* 960 F.2d 461, 463 n. 2 (5th Cir.1992); *United States v. Davis,* 926 F.2d 969, 971 (10th Cir.), *cert. denied,* 500 U.S. 926, 111 S.Ct. 2036, 114 L.Ed.2d 121 (1991); *United States v. Davis,* 876 F.2d 71, 73 (9th Cir.), *cert. denied,* 493 U.S. 866, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989); *United States v. Lincoln,* 589 F.2d 379, 381 (8th Cir.1979); *United States v. Chatman,* 584 F.2d 1358, 1361 (4th Cir.1978). We reject Geisler's attempt to create a new element of the offense.

■ Our holding on Geisler's first claim renders nugatory his second claim that we should dismiss his indictments on account of allegedly perjured testimony presented by the Government. As we noted earlier, DeAcklen testified that she only read two or three of Geisler's six threatening letters. An FBI agent testified to the grand jury that DeAcklen "has looked at several of the letters. Some of the most recent letters, since they're so upsetting to her, were turned over to us before she actually had read them. But the majority of the letters were reviewed by her." Geisler seizes on the agent's use of the terms "majority" and "several" and states that this alleged perjury irreparably tainted the indictment process. This, however, is a slender reed on which to hang the weighty accusation of lying under oath.

Even assuming *arguendo* that the challenged testimony could be construed to constitute perjury, Geisler could not make the necessary showing that the agent's testimony affected the grand jury's decision to indict. *See United States v. Brooks,* 125 F.3d 484,

497 (7th Cir.1997) ("A district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.") (quotation omitted); *United States v. Anderson,* 61 F.3d 1290, 1296 (7th Cir.), *cert. denied,* 516 U.S. 1000, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995). The Supreme Court held in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), that dismissal of an indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* at 256, 108 S.Ct. at 2374 (quotation omitted). In this case, as we have held, DeAcklen's receipt of the relevant threatening letters was not an element of the offense; thus, the issue of which letters were actually read by DeAcklen was irrelevant to the grand jury's decision to charge Geisler with sending threatening communications through the mails. We therefore hold that the district court correctly denied Geisler's motion to dismiss the indictments.

For the foregoing reasons, we affirm Geisler's convictions.