**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael R. SIEGLER, Defendant–**
**Appellant.**

**No. 01–2471.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 2001.

Decided Nov. 30, 2001.

**976**

Daniel J. Graber (argued), Office of the U.S. Atty., Madison, WI, for Plaintiff-Appellee.

David R. Karpe (argued), Madison, WI, for Defendant-Appellant.

Before FLAUM, Chief Judge, and BAUER and EVANS, Circuit Judges.

FLAUM, Chief Judge.

After Michael Siegler pleaded guilty to one count of mailing a threatening communication, 18 U.S.C. § 876, the district court sentenced him to a five-year prison term to run consecutively to the 15–year prison term he is currently serving. Siegler appeals his sentence, arguing that because he did not communicate the threat directly to the victim and because his conduct before and after the threat was not directly and substantially connected to the threat itself, the district court erred in adding six levels to his base offense level for "conduct evidencing an intent to carry out a threat" under U.S.S.G. § 2A6.1(b)(1). We affirm.

## I. Background

Siegler was the leader, or "Superior," of a street gang known as the Simon City Royals, which operated in Eau Claire and Chippewa Falls, Wisconsin. During the summer of 1999, Siegler was incarcerated in the Dane County Jail awaiting sentencing on his conviction for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). At some point during that summer, Siegler telephoned Kenny Hester, his second-in-command and the gang's "Enforcer," to inform Hester that he would be sending him some "paperwork" about the people who testified against Siegler in his felon-in-possession case. Siegler told Hester that he wanted him to "take care of it." Based on statements Siegler made when he and Hester were previously in jail together, that he would kill anyone who "snitched" on him, Hester understood Siegler's order to mean murder. Then, on August 9, 1999, Siegler mailed Hester a package of discovery materials from his felon-in-possession case. The materials included reports of interviews of three witnesses—Jordyn Hauger, Ben Neubauer, and Keith Tidemarsh—who provided statements to the police regarding the felon-in-possession charge against Siegler.

On August 30, 1999, the district court determined that, for the purposes of the felon-in-possession conviction, Siegler was an armed career criminal, 18 U.S.C. § 924(e)(2); U.S. Sentencing Guidelines Manual § 4B1.4(a), and sentenced him to 15 years in prison followed by five years of supervised release. The very next day, Siegler mailed Hester a letter in which he expressed his wrath at one of the witnesses who provided incriminating evidence against him. The letter read:

> Kenny,
>> Business!!!    I couldn't say over a phone.
>> This girl testified against me. Do what you have to do!
>> Jordyn Hauger 715–834–4739
>> 4336   Meadow Lane
>> Eau Claire
>> 16   Years old <u>Red hair</u> s.s.
>> goe's [sic] to Memorial with Lana's <u>sister!</u>
>> <u>Your Brother Always!</u>

Romeo

Simon City Royals

In a phone conversation with Hester a few days later, Siegler repeatedly asked Hester when he was going "to take care of it," referring to his order in the letter to "[d]o what you have to do" to Hauger. Siegler also telephoned Shilo Schneider, Hester's girlfriend (who was also Siegler's ex-girlfriend), and her brother, Shawn Schneider, and pressured them to encourage Hester to "take care of" Hauger. Based on their prior interaction with Siegler in the Royals and their perception of Siegler as a "very tough individual," Hester, Shilo and Shawn all understood the letter to mean that Siegler wanted Hester to beat up or kill Hauger in retaliation for her testimony. After Hester finally refused to carry out the order, Siegler told Shawn to "take care of it." Shawn then spoke with another Royal, Nick Rands, about shooting Hauger. Shawn and Rands made no further plans, however, and Siegler's order was never carried out.

In August 2000, a federal grand jury indicted Siegler for witness retaliation (Count I), 18 U.S.C. § 1513(b)(2), and mailing a threatening communication (Count II), 18 U.S.C. § 876. In a written agreement and at a hearing in January 2001, Siegler admitted that he wrote and mailed the letter threatening Hauger, and pleaded guilty to Count II in exchange for the government's dismissal of Count I.

In the presentence investigation report ("PSR"), the probation officer recommended a six-level increase in Siegler's base offense level based on his conduct evidencing that he intended to carry out the threat in the letter. *See* U.S. Sentencing Guidelines Manual § 2A6.1(b)(1). Siegler objected to this recommendation, arguing that he quickly abandoned the threat as soon as he had "blown off some steam" about his 15–year prison sentence and that the letter was really just a "solici-

tation," not a threat. The district court rejected Siegler's arguments and instead found that by mailing Hauger's interview report to Hester on August 9, by writing and mailing the threatening letter to Hester, and by pressuring other gang members to carry out the order in the letter, Siegler engaged in conduct that evidenced his intent to carry out the threat against Hauger. Accordingly, the district court added six levels to Siegler's base offense level, which, when combined with his lengthy criminal history, resulted in a five-year prison term to run consecutively to his 15–year term on the felon-in-possession charge. Siegler filed a timely notice of appeal, raising only the issue of the six-level increase pursuant to U.S.S.G. § 2A6.1(b)(1).

## II. Discussion

■ Section 2A6.1, which governs threatening or harassing communications, provides a base offense level of 12, U.S. Sentencing Guidelines Manual § 2A6.1(a)(1), and an additional six-level increase "[i]f the offense involved any conduct evidencing an intent to carry out such threat," U.S. Sentencing Guidelines Manual § 2A6.1(b)(1). In the comment to the guideline, the Sentencing Commission instructs the district court to consider both (1) conduct that occurred prior to the offense and that is "substantially and directly connected to the offense," and (2) conduct that occurred during the offense. U.S. Sentencing Guidelines Manual § 2A6.1, cmt. n. 2. We have interpreted the commentary to allow the district court to consider the defendant's overt activity "substantially and directly" connected to the threat as well as the conduct of others for whom the defendant is accountable under U.S.S.G. § 1B1.3. *United States v. Thomas*, 155 F.3d 833, 838–39 (7th Cir. 1998). We review for clear error the district court's factual determination that a

defendant's conduct evidenced an intent to carry out a threat and will reverse only when that determination is "so inconsistent with the evidence" as to constitute clear error. *See United States v. Sullivan*, 75 F.3d 297, 302–03 (7th Cir.1996).

Throughout his briefs, Siegler attempts to portray the August 31 letter as a solicitation rather than a threat, in effect trying to challenge his conviction for violating 18 U.S.C. § 876. By pleading guilty, however, Siegler admitted both of the elements of Count II (mailing a threatening communication). *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("[A] guilty plea is an admission of all the elements of a formal criminal charge."); *United States v. Gilliam*, 255 F.3d 428, 433 (7th Cir.2001) (same). In the written plea agreement and during the plea hearing, Siegler admitted that on August 31, 1999, he wrote and mailed to Hester a letter threatening Hauger; no more was required for a conviction under 18 U.S.C. § 876. *See United States v. Geisler*, 143 F.3d 1070, 1071–72 (7th Cir.1998) (conviction under 18 U.S.C. § 876 requires proof of two elements: (1) a threatening communication (2) was sent through the mail); *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir.1990) (conviction under 18 U.S.C. § 876 does not require proof that defendant intended to carry out threat). By admitting that the letter he sent contained a threat within the meaning of 18 U.S.C. § 876, Siegler waived any subsequent argument about the nature of the threat. *See United States v. Newman*, 148 F.3d 871, 876 (7th Cir.1998) (defendant's stipulation to conduct in plea agreement conclusively admitted facts and waived subsequent challenge to them). Accordingly, Siegler's argument that the letter did not contain a "true threat" is irrelevant to his appeal of his sentence.

Siegler also argues that because he did not send the letter to Hauger or directly communicate the threat to her, there was no conduct evidencing his intent to carry out the threat. To the contrary, the district court relied on ample evidence in the record to determine that Siegler intended that Hauger be harmed in retaliation for her testimony against him. First, the court pointed to Siegler's prior conduct: his mailing the discovery materials from his felon-in-possession case to Hester on August 9, 1999. This act was directly linked to the actual threat because the materials included a report of Hauger's witness interview, her address and a description of her appearance. In the threatening letter, Siegler also expressed his anger about Hauger's testifying against him and gave Hester a description of Hauger and information on her whereabouts. Accordingly, Siegler's prior conduct had a direct and substantial connection to the threatening letter, *see* U.S. Sentencing Guidelines Manual § 2A6.1, cmt. n. 2, and the district court properly considered that conduct in assessing Siegler's intent to carry out the threat contained in the August 31, 1999 letter. *See Sullivan*, 75 F.3d at 302–03 (district court did not err in finding that defendant's prior shooting of victim's truck constituted prior conduct with direct and substantial connection to actual threat and demonstrated intent to carry out threat).

Second, consistent with the guideline commentary, *see* U.S. Sentencing Guidelines Manual § 2A6.1, cmt. n. 2, the district court evaluated the content of the threat itself, finding that the detailed information about Hauger in the letter weighed in favor of finding that Siegler intended to carry out his threat. By providing details about Hauger and where she might be found, Siegler gave Hester critical information to carry out the threat. In addition, by giving the order to Hester, the

gang's Enforcer, to "[d]o what [he had] to do" to Hauger, Siegler demonstrated the seriousness of the threat. As Hester knew from having spent time in jail with Siegler and from having heard Siegler state that he would kill anyone who snitched on him, this was not merely "idle talk" among friends. *See Thomas,* 155 F.3d at 839 (rejecting defendant's argument that statement to third party containing threat against victim was "mere idle talk"); *Sullivan,* 75 F.3d at 302 ("[I]t is the responsibility of the district court to distinguish mere talk from talk which evidences an intent to act."). And, because Siegler did not know that Hester did not intend to carry out the threat, Hester's reluctance does not negate Siegler's intent; from his prison cell, Siegler still went to great lengths to see that Hauger was "take[n] care of." The record supports the district court's finding that Siegler made the threat in a manner which demonstrated his intent to carry out the threat against Hauger. *See Sullivan,* 75 F.3d at 302.

Finally, in rejecting Siegler's argument that he immediately abandoned the threat and did not intend to execute the threat against Hauger, the district court relied on Siegler's conduct after the threatening letter. Through his frequent telephone calls to Hester, asking him whether he had "take[n] care of it" and when he would carry out his order, Siegler demonstrated that for at least several days after he mailed the letter he intended that Hauger be punished for testifying against him, and that, even from his prison cell, he strove to ensure that his threat was carried out. *See* Thomas, 155 F.3d at 839–40 (defendant's comment to investigator that " 'if he saw [the victim] on the street, he would take a battery charge,' " demonstrated that defendant intended to cause actual physical harm to victim). Frustrated by Hester's inaction, Siegler turned to Shilo and Shawn Schneider to pressure Hester to carry out the hit on Hauger. And, after

Hester finally refused to carry out the order, Siegler turned to Shawn to "take care of" Hauger. Thus, the district court did not clearly err in finding that, rather than abandoning the threat, Siegler persisted through repeated calls to other gang members in trying to enlist their support to harm or even kill Hauger for her damaging testimony.

The district court weighed the evidence in the record and evaluated the credibility of Siegler's claim that the threat was mere idle talk that he immediately abandoned after he blew off steam about his 15–year prison term for the felon-in-possession conviction. The evidence fully supports the court's determination that Siegler's conduct before, during, and after the actual threat demonstrated his intent to have the threat against Hauger carried out. Accordingly, the district court did not clearly err in adding six levels to Siegler's base offense level pursuant to U.S.S.G. § 2A6.1(b)(1).

### III. Conclusion

The district court did not clearly err in finding that Siegler's conduct evidenced his intent to have the threat against Hauger carried out and warranted an increase in Siegler's base offense level by six pursuant to U.S.S.G. § 2A6.1(b)(1). Therefore, the judgment of the district court is

AFFIRMED.