# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 02-1586

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

FRANKLIN XAVIER,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-CR-30038-DRH—**David R. Herndon**, *Judge.*

————————

ARGUED SEPTEMBER 11, 2002—DECIDED NOVEMBER 19, 2002

————————

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* What we have here is trouble on Con Air. Franklin Xavier was a federal prisoner about to be transported from the federal penitentiary in Marion, Illinois, to the federal prison in Leavenworth, Kansas, on a federal prisoner transport plane. The federal officers in charge of his transfer attempted to search his hair, which he wore in dreadlocks, a common hairstyle in his home in St. Croix, United States Virgin Islands. Xavier refused to allow the search, and although he was in leg shackles, he managed to kick corrections officer William Pierce. Senior aviation officer David Lowery immediately forced Xavier to

the ground and restrained him. The search was completed, after which Xavier was carried into the plane. He was laid out across three seats and strapped in using a cargo and seat belt.[1] He continued to be agitated and to shout. The plane made a stop in Sioux Falls, South Dakota, to discharge some inmates and pick up others, at which time Xavier was given food and medical attention. During the subsequent flight from Sioux Falls to Oklahoma City, Xavier calmed down. But after having done so, he spoke directly to Officer Lowery, saying that when he left prison he would kill Lowery and his wife and children. The statement was not seen as an idle threat because, at that time, Xavier had only a short period left to serve on his sentence. As a result of his behavior, he was charged with assault upon a federal officer, in violation of 18 U.S.C. § 111, and with knowingly threatening to kill a federal official, in violation of 18 U.S.C. §§ 115(1)(2) and (b)(4).

Xavier was tried to the court, found guilty of the charges, and sentenced to terms of 36 months and 60 months. Even though he understood he could, the judge declined to run the sentences consecutively so as to accommodate the higher guideline range, which he had found applied to Xavier.

It is the guideline calculations from which Xavier appeals. Specifically, he appeals two aspects of his sentence: the denial of his request for a decrease in his offense

---

[1] This plane and its passengers conjure up images of the awful 1997 Nicholas Cage-John Malkovich film, "Con Air," a movie, according to Roger Ebert, that "knows it is absurd, and does little to deny it." While we don't know about Xavier's fellow travelers, we hope they were not like some of the cons on Con Air, a motley collection which included Cyrus the Virus, Diamond Dog, Garland Greene (a serial killer played by Steve Buscemi, who arrived on board in a Hannibal Lecter-like traveling suit), and Johnny 23, so called because of his 23 rape convictions ("It woulda been Johnny 600 if they knew the whole story," he proudly proclaims).

level and an upward departure in his criminal history category under the United States Sentencing Guidelines.

The first calculation Xavier objects to involves the refusal to apply U.S.S.G. §2A6.1(b)(4). Section 2A6.1 deals with threatening or harassing communications and establishes a base offense level of 12. Subdivision (b)(4) states that "[i]f (A) . . . subdivisions (1), (2), and (3) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels." It is this 4-level decrease to which Xavier contends he is entitled. We review determinations of the sentencing court for clear error and reverse only when the determination is inconsistent with the evidence. *United States v. Siegler*, 272 F.3d 975 (7th Cir. 2001).

In refusing to apply subdivision (b)(4), the sentencing judge noted that at the time he made the threat to Officer Lowery, Xavier was "no longer agitated and shouting." The judge noted Officer Lowery's testimony that Xavier "was laying on the seat strapped to the seat. It was almost eerie, cool, calm and collected statement of fact that he said that." That testimony led the judge to determine that this was a "very different circumstance than the outburst and the spontaneous eruption" and to find that in an "eerie, cool, calm, collected manner, he issues a threat to this federal officer." Xavier's manner was seen as evidence of deliberation, "evidence that he had an opportunity to think about what he was going to say." Try as we are urged to, no clear error can be detected in this determination.

Xavier seems to contend that our decision in *United States v. Horton*, 98 F.3d 313 (7th Cir. 1996) compels us to find error. We disagree. Horton was convicted of making a bomb threat against a federal building. The threat came one day after the bombing of the Murrah Federal Building in Oklahoma City. In declining to grant the 4-point reduction in U.S.S.G. § 2A6.1(b)(2), the judge thought that Horton was taking advantage of the heightened fear which

followed the Oklahoma City attack. We viewed this as a "global" justification for the denial of the reduction and remanded the case for "a more thorough analysis." We see no global justifications in Xavier's case. Here, the judge tied his determination to a close look at what had happened, particularly the circumstances under which Xavier made the threat and its timing. These were not copious findings, but given the lack of complexity in the events, anyone would be hard-pressed to say very much about them. So long as the salient facts were examined, no more is necessary.

Xavier also contends that it was error to depart upward in the criminal history category, under U.S.S.G. §4A1.3(e). We review an upward departure under §4A1.3 under a three-part test. First, we determine whether the sentencing court stated adequate grounds to support the departure. This determination is reviewed *de novo*. Next, we review for clear error whether the facts cited to support the departure, in fact, exist. Finally, we review deferentially whether the degree of departure is linked to the structure of the guidelines. *United States v. Cross*, 289 F.3d 476 (7th Cir. 2002); *United States v. Peterson*, 256 F.3d 612 (7th Cir. 2001).

The sentencing judge based his departure on a factor specifically recognized in the guidelines: "prior similar adult criminal conduct not resulting in a criminal conviction" as set out in §4A1.3. That section says the court may depart upward

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. . . .

Section 4A1.3(e) says that the information on which the court may rely includes "prior similar adult criminal conduct not resulting in a criminal conviction."

In addition to finding it "extraordinary" that Xavier tried to deny the convictions which were in the record from the Bureau of Prisons, the judge was concerned with other threats Xavier had made. On one occasion Xavier said, "I would like to kill all U.S. Marshals that come down to the islands." He said, "All U.S. Marshals need to be killed." He sprayed bleach on another inmate in the jail. He threw feces on other inmates; flooded his cell; refused orders of the jailers. And in what might have been the crowning blow, he wrote an outrageous letter to a probation officer. The judge found that Criminal History Category III did not reflect Xavier's criminal history and did not reflect the likelihood that he would commit other similar crimes. The judge, in fact, thought Xavier deserved to be in the highest category based on the likelihood that he would commit other crimes like the crimes of conviction. And unfortunately for Xavier, the judge had first-hand experience with Xavier's tendency to act out. During the sentencing hearing itself when the prosecutor was saying that Officer Lowery took Xavier to the ground during the incident, Xavier interrupted by saying, "It wasn't no fucking Officer Lowery who body-slammed me." Other obscenities followed, in what could only be seen as a demonstration of Xavier's propensity to angry outbursts. It is not too large a leap to think that those outbursts might escalate in the future to threats. The judge stated the grounds for departure and the facts on which the departure was based.

While we might question the degree of departure, we also note that we review that issue deferentially. Furthermore, even had the departure been to category V rather than VI, Xavier could have received the sentence he was given. Xavier's offense level was 18, and in criminal history category VI his sentencing range was 57 to 71 months. As we said earlier, the statutory maximums on his counts of conviction were 36 months and 60 months. Even though he understood that he could, the judge did not run the sen-

tences consecutively so as to sentence Xavier on the higher end of the guidelines. Rather, the sentence imposed was 60 months, which was within the range for Criminal History Category V as well.

The judge articulated his own frustration with Xavier and the temptation to impose a higher sentence, but he refrained:

> And there is that part of me that wants to put this guy in jail, give him life, just like he invited me to do; give him 300 years, like he invited me to do. But, I can't do that. I have to look at this dispassionately. I have to look at this in a way that is more rational. I can't reduce myself to the kind of histrionics that Mr. Xavier wants to display from time to time. And I really think, all in all, that a five-year sentence in this case is an appropriate sentence, given everything that I've considered. And while I understand I have the discretion, as [the prosecutor] indicated, to make these sentences consecutive, and there is that part of me that would like to do that, I just think that an appropriate sentence would be five years.

We see no error in Xavier's sentencing proceeding. AFFIRMED.

A true Copy:

      Teste:

 

                  _____

                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*