NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2016
Decided October 28, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 15-2398

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-10048-001 |
| ANTONIO D. CRAWFORD, *Defendant-Appellant*. | James E. Shadid, *Chief Judge*. |

**O R D E R**

Antonio Crawford, an Illinois prisoner, mailed to the federal courthouse in Portland, Maine, several letters vowing that federal judges and prosecutors in that district would "pay" just as he had "paid all my money to see most of yall dead." He also wrote that he would rape the assistant United States attorney allegedly responsible for prosecuting his "brother." Crawford was charged with mailing threatening communications in violation of 18 U.S.C. § 876(c). That provision makes it a crime to send by mail an objectively threatening communication with intent to communicate a threat or with knowledge (or, possibly reckless disregard) that the communication will be viewed as threatening. *See Elonis v. United States*, 135 S. Ct. 2001, 2012–13 (2015); *United States v. Geisler*, 143 F.3d 1070, 1071–72 (7th Cir. 1998). Crawford was evaluated and found competent to stand trial. He then pleaded guilty after trying unsuccessfully to have the § 876(c) charge dismissed on the ground that his threats were speech

protected under the First Amendment. The district court sentenced him at the low end of the guidelines range to 70 months' imprisonment, running consecutively to his undischarged state sentence.

Crawford filed a notice of appeal, but his newly appointed attorney asserts that the appeal is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Crawford opposes counsel's motion. *See* CIR. R. 51(b). Counsel has submitted a brief that explains the nature of the case and addresses issues that an appeal of this kind might be expected to involve. We limit our review to the subjects counsel discusses, plus the additional issues that Crawford presents in his response. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Although appellate counsel does not say that he asked Crawford if he wants to challenge his guilty plea, the lawyer nevertheless discusses in his *Anders* brief whether Crawford could challenge the plea colloquy or the voluntariness of the plea. If counsel did not consult Crawford, he should have. *See United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002). Even so, counsel's apparent omission is harmless because an appellate claim based on the guilty plea would be frivolous. *See Konczak*, 683 F.3d at 349.

During the plea colloquy the district court informed Crawford that he could stand on his plea of not guilty and proceed to a jury trial, at which he would have the right to an attorney and the rights to confront and cross-examine adverse witnesses, to call his own witnesses, and to testify or not at his option. *See* FED. R. CRIM. P. 11(b)(1)(B–E). The court also admonished Crawford that pleading guilty would waive these trial rights. *See* FED. R. CRIM. P. 11(b)(1)(F). The court sought to ensure that a factual basis supported the indictment and that Crawford understood the nature of the charge, the potential penalties, and the role of the sentencing guidelines and factors from 18 U.S.C. § 3553(a) in selecting an appropriate sentence. *See* FED. R. CRIM. P. 11(b)(1)(G), (H), (M), (b)(2–3). The court did neglect to tell Crawford that his sworn statements during the colloquy could be used to prosecute him for perjury, but this oversight could not have been plain error because Crawford has not been accused of lying during the colloquy. *See United States v. Blalock*, 321 F.3d 686, 689 (7th Cir. 2003).

But there was one wrinkle in the plea colloquy, though not significant enough to present a nonfrivolous claim for appeal. Crawford mailed his letters in 2012 and pleaded guilty before the Supreme Court decided in *Elonis* that the parallel statute criminalizing threats sent through a means of interstate or foreign commerce,

*see* 18 U.S.C. § 875(c)), includes a *mens rea* element requiring more than just knowledge that a communication has been *sent*. *See Elonis*, 135 S. Ct. at 2011. Before *Elonis* we did not understand § 876(c) to require for conviction proof that the defendant purposely intended to communicate, or at least knew that his communication would be viewed as, a threat. *See Geisler*, 143 F.3d at 1071–72; *United States v. Aman*, 31 F.3d 550, 553 (7th Cir. 1994); *United States v. Khorrami*, 895 F.2d 1186, 1191 (7th Cir. 1990). But after *Elonis*, which also applies to § 876(c), *see Twitty v. United States*, 136 S. Ct. 90 (2015) (vacating § 876(c) conviction and remanding for reconsideration in light of *Elonis*), it was not enough for the government to establish, as the indictment in this case alleges, that Crawford knowingly *mailed* his letters to the courthouse in Portland. Thus, Crawford might argue on appeal that the plea colloquy was defective because he was not told, when the charge was explained, that the statute's intent element goes further to focus also on what he meant for his communications to convey.

That potential challenge to the plea colloquy would be frivolous, however, because *Elonis* was decided before Crawford's sentencing and was flagged by the prosecutor during that proceeding. Yet Crawford did not move to withdraw his guilty plea, and thus we would review the plea colloquy only for plain error. *United States v. Vonn*, 535 U.S. 55, 63, (2002); *United States v. Sura*, 511 F.3d 654, 658 (7th Cir. 2007). Crawford would need to "show a reasonable probability that, but for the error, he would not have entered the plea" and convince us that, in light of the entire record, "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 669 (1984)). And on this record it would be frivolous for Crawford to contend that he would have declined to plead guilty and instead gone to trial had the district court admonished that conviction would require proof that he meant to threaten the intended recipients of his letters. The presentence investigation report recounts that Crawford repeatedly told federal investigators that he intended his statements to be threats. He directed those statements toward specific federal officials, conveying a desire and plan to physically hurt them, and he mailed multiple letters, leaving opportunity between the communications to reconsider his words. *Compare United States v. White*, 810 F.3d 212, 222 (4th Cir. 2016) (concluding post-*Elonis* that failure to instruct jury properly on *mens rea* for § 875(c) was harmless since defendant used "direct and declarative" language, gave "no other explanation for the message," and admitted wanting to scare recipient of communication) *cert. denied*, 136 S. Ct. 1833, (2016), *with United States v. Houston*, 792 F.3d 663, 667–68 (6th Cir. 2015) (concluding that district court committed plain error in § 875(c) prosecution by giving incomplete jury instruction on intent, since jury could have found that defendant was

"ranting and raving rather than expressing an intent to cause harm" when he called girlfriend saying he planned to shoot third party, which girlfriend dismissed "out of hand").

Apart from the Rule 11 colloquy, appellate counsel also considers whether Crawford might argue that the district court should have granted his motion to dismiss the indictment. That pro se motion asserts that Crawford's letters contain political speech that, even if threatening, is protected by the First Amendment. Yet true threats are never protected speech. *Virginia v. Black*, 538 U.S. 343, 359 (2003); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992); *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010). And even if Crawford meant to suggest—notwithstanding his admissions to investigators—that these statements are not threats, that factual defense was waived by Crawford's guilty plea. By pleading guilty, Crawford admitted the essential elements of the § 876(c) charge. *See United States v. Broce*, 488 U.S. 563, 569-71 (1989); *United States v. Vela*, 740 F.3d 1150, 1153–54 (7th Cir. 2014). Thus we agree with counsel that an appellate claim challenging the denial of Crawford's pro se motion would be frivolous.

Counsel next contemplates basing an appeal on objections that Crawford raised to the district court's application of the sentencing guidelines. For one, Crawford argued that his crime was victimless because no judge or prosecutor in Maine personally received his threatening letters. On that ground he opposed an upward adjustment under U.S.S.G. § 2B3.2(b)(1), which adds 2 offense levels if the crime "involved an express or implied threat of death, bodily injury, or kidnapping." But whether the letters reached their targets has nothing to do with whether those letters contain the type of threat meriting an increase under § 2B3.2(b)(1). And if Crawford actually was positing that the interception of his letters before they reached the intended recipients undermines his conviction, that contention likewise is frivolous: Receipt by the victim is not an element of § 876(c). *See Geisler*, 143 F.3d at 1071–72.

Crawford's second objection at sentencing was to receiving criminal-history points for both state and federal convictions arising from the same underlying conduct. Prior sentences for crimes committed without an intervening arrest are counted as one only if "(A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2). Crawford's argument would be frivolous because, although he was convicted in state court of attempted armed robbery and in federal court of bank robbery based on the same underlying conduct, those crimes obviously were not charged in the same

instrument, and neither were the sentences imposed on the same day. *See United States v. Jones*, 698 F.3d 1048, 1050–51 (8th Cir. 2012).

Crawford's final sentencing objection concerned the addition under § 4A1.2(d)(2)(A) of criminal-history points for two juvenile offenses. That guideline provision adds 2 points for each "sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." U.S.S.G. § 4A1.2(d)(2)(A). If parole is revoked for an offense committed before age 18, the duration of confinement is counted using "the date of the defendant's last release from confinement on such sentence." U.S.S.G. § 4A1.2(k)(2). Crawford's appellate lawyer considers whether the defendant could argue that "sentence to confinement" should include only time he was actually incarcerated, not a period of supervised release. Crawford's proposed interpretation would not make a difference, however, because Crawford was incarcerated for more than 60 days for each offense and was released from incarceration for both offenses on July 27, 2010, i.e., within 5 years of mailing the threatening letters in 2012.

Crawford raises additional points in his Rule 51(b) response. He first contends that the district court erred in waiting a year before ordering a competence evaluation. Crawford's trial attorney did not move for an evaluation until November 2013, seven months after the defendant's initial appearance. The court promptly ordered an evaluation, which the examining psychologist completed in March 2014. But a competence evaluation serves only to determine if the defendant is competent to stand trial, *see* 18 U.S.C. § 4241(a); *United States v. Anzaldi*, 800 F.3d 872, 877 (7th Cir. 2015), not to assess whether the defendant was sane at the time of the alleged crime, as Crawford implies. If Crawford wanted to explore an insanity defense, he needed to act "within the time provided for a pretrial motion," FED. R. CRIM. P. 12.2(a), and he did not do so. *See also United States v. Dubrule*, 822 F.3d 866, 882 (6th Cir. 2016) (noting that defendant waives insanity defense by not asserting defense within Rule 12.2's deadline), *cert. denied*, (U.S. Oct. 3, 2016).

Finally, Crawford insists that the district judge should have recused himself after receiving a threatening letter from Crawford. But recusal is not required if a defendant has made a threat for the very purpose of forcing a recusal, *see In re Nettles*, 394 F.3d 1001, 1002–03 (7th Cir. 2005), and the sentencing transcript suggests that this was Crawford's aim. *See also In re Basciano*, 542 F.3d 950, 957 (2d Cir. 2008); *United States v. Holland*, 519 F.3d 909, 910–11 (9th Cir. 2008); *United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994). Crawford asked the judge if he had received the threatening letter

and then said that remaining impartial after being threatened would be difficult for anyone. This was an obvious effort to manipulate a recusal, and it would be frivolous for Crawford to claim that the judge erred in refusing to step aside.

Accordingly, we GRANT the motion to withdraw and DISMISS the appeal.