**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2021[*]
Decided November 4, 2021

*By the Court:*

No. 19-2163

|  |  |
|---|---|
| WILLIAM J. MABIE, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *Petitioner-Appellant,* |  |
| *v.* | No. 2:18-cv-00087-WTL-DLP |
| J.R. BELL, | William T. Lawrence, |
| *Respondent-Appellee.* | *Judge.* |

**O R D E R**

Federal prisoner William Mabie appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. He challenges his 2010 convictions under 18 U.S.C. §§ 875(c) and 876(c) for sending threatening communications, arguing that under *Elonis v. United States*, 575 U.S. 723 (2015), the jury should have been instructed that he was guilty only if he intended to threaten his victims. Although he is correct that the jury was improperly instructed, Mabie cannot show that the absence of an instruction about his state of mind resulted in a miscarriage of justice; therefore, we affirm the denial of collateral relief.

Mabie's convictions arise from several disputes he had in the St. Louis, Missouri, area in 2007 and 2008. The first was with two county attorneys who prosecuted him for

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

misdemeanor assault and for harassing witnesses during his assault trial. He asserted that the prosecutors had elicited perjured testimony. Another was with the owner of a towing company from whom he had rented garage space. When that business relation soured, he berated the owner for supposedly stealing his tools and other property, and he accused a local police lieutenant of aiding the garage owner in a cover-up. Mabie responded to these disputes by threatening multiple people.

Four specific communications resulted in the federal charges that went to trial in the Eastern District of Missouri. First, Mabie mailed a letter to the garage owner's mother, accusing her son of stealing from him and warning that her son could succeed only if the "ACTUAL owner is not ready to put several bullets in his head and his kids and grandkids heads." Second, Mabie called a police sergeant to report that the garage owner's police-lieutenant friend had challenged him to a gun fight. Mabie warned that he was a better marksman and that the lieutenant's address would not "be a tranquil area much longer." Finally, Mabie sent letters to the unlisted addresses of two county prosecutors. In them, he referred to the prosecutors' and witnesses' "lies" during Mabie's prior assault and harassment prosecutions. Mabie said he would "stop by some evening" at one prosecutor's home to "work toward justice" if the prosecutor did not admit to lying at trial. Mabie told the other prosecutor that if she "makes things right, she may have a happy life," but if not, she would "suffer the consequences" and "these lies will follow her forever, I AM ABSOLUTELY SURE IT WILL."

Representing himself in federal court, Mabie subpoenaed 42 witnesses. When requesting the subpoenas, he asserted that several would testify about his *mens rea*, such as his desire to first resolve his disputes using methods other than threats. Other witnesses, Mabie claimed, would help prove the existence of a criminal conspiracy. The subpoenas fit into Mabie's broader strategy of justifying his actions by arguing that the situations had left him with no other way to resolve his disputes.

Soon after the subpoenas issued, Mabie sent threatening letters to various people, bragging about his ability to use the subpoena process for harassment. For example, he taunted the garage owner about forcing his mother to testify, saying that the trial would last "for days" and asking, "how his mom is going to like being grilled about what [a] shithead he is?" He also sent a letter to the chief of the St. Louis Police Department, explaining he would drop the subpoenas if he received $21,000 and the chief convinced the United States Attorney to drop the prosecution. The government successfully moved to quash most of the subpoenas and to revoke Mabie's *pro se* status. His standby counsel stepped in for the remainder of the proceedings.

At trial, Mabie testified that he had not wanted to threaten anybody. Instead, he wanted to stop the ongoing criminal operation at the garage and address the county prosecutors' misconduct. He also debated with the federal prosecutor during cross-examination about whether his communications were threats. He argued, for instance, that his message to the garage owner's mother was ambiguous because he said he was "not ready" to shoot anyone, and he only wanted to let the recipient "know that there's a problem" so she could intervene and stop her son.

Ultimately, Mabie's testimony mattered little because the judge rejected Mabie's argument that, under the First Amendment, his speech was protected unless he had the intent to threaten. The jury found Mabie guilty on three counts of mailing threatening communications (to the mother and two prosecutors), 18 U.S.C. § 876(c), and one count of interstate communication of a threat (the phone call to the sergeant), *id.* § 875(c). The jury instructions stated that Mabie was guilty under either statute if he (1) made a "true threat"—a message that a reasonable person would perceive as a threat—and (2) knowingly transmitted the message.

At sentencing, the judge found that Mabie had lied when he testified that he did not intend to threaten his victims and therefore imposed a two-level enhancement under the Sentencing Guidelines for obstruction of justice. *See* U.S.S.G. § 3C1.1. The judge then sentenced Mabie to 88 months' imprisonment and three years' supervised release. On direct appeal, the Eighth Circuit held that the government did not need to prove Mabie's subjective intent, upheld the judge's decision to quash Mabie's subpoenas, and agreed with the sentencing enhancement for obstruction of justice. *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011). Mabie's attempts to attack his sentence under 28 U.S.C. § 2255 were unsuccessful. Although he completed his 88-month prison term, he has not yet started his term of supervised release; he remains imprisoned following new convictions for sending threats from prison and assaulting a United States Marshal. *See United States v. Mabie*, 862 F.3d 624 (7th Cir. 2017).

After Mabie's appeal and collateral attack, the Supreme Court of the United States held that a conviction under § 875(c) requires the government to prove that the defendant intended to issue threats or knew that the communication would be viewed as a threat. *Elonis*, 575 U.S. at 740. In doing so, the Court vacated a conviction based on jury instructions like those in Mabie's case, which required only an objectively threatening message coupled with the intent to send it. *Id.* at 731. The Court did not explicitly address whether its holding also applies to convictions under § 876(c), but it later implied as much. *Twitty v. United States*, 577 U.S. 802 (2015) (mem.). And we have

applied *Elonis* to both statutes. *See, e.g., United States v. Crawford*, 665 F. App'x 539, 541 (7th Cir. 2016).

Mabie then filed a petition for a writ of habeas corpus under § 2241 in the Southern District of Indiana, where he was confined at the time. In general, a federal prisoner wishing to attack his sentence collaterally must file a § 2255 motion in the district where he was convicted. *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). But the saving clause of § 2255(e) allows the prisoner to file a § 2241 petition in the district of confinement, if the prisoner can establish that § 2255 is "inadequate or ineffective to test the legality of his detention," such as if the petition relies on a new rule of statutory interpretation. *In re Davenport*, 147 F.3d 605, 610–11 (7th Cir. 1998). In such cases, the petitioner must show that: (1) he seeks relief based on a decision of statutory interpretation; (2) the decision declares a rule that applies retroactively and which the prisoner could not have previously relied on; and (3) relief is necessary to avoid a miscarriage of justice, such as the conviction of an innocent defendant. *Davis v. Cross*, 863 F.3d 962, 964 (7th Cir. 2017).

Mabie's petition primarily contended that his convictions under §§ 875(c) and 876(c) are invalid in light of *Elonis*. The district judge agreed with Mabie that the jury instructions did not accurately reflect the current law. Further, the judge concluded, the first two prongs of the saving-clause test from *Davenport* were satisfied because *Elonis* was a new, retroactive rule of statutory interpretation, and any *Elonis*-style argument was foreclosed by Eighth Circuit law when Mabie filed his direct appeal and § 2255 motion. But the judge concluded that Mabie could not establish that his conviction was a miscarriage of justice because it produced the conviction of an innocent person. He explained that the jury would have reached the same verdict even if properly instructed because nothing in the record suggested that Mabie did not know that his statements were threatening (or would be so understood).

In the district court, the government argued that *Elonis* did not provide the type of new rule that allows Mabie to seek relief under § 2241. But on appeal, the government concedes that Mabie's petition satisfies the first two prongs of *Davenport*'s test and argues only that Mabie cannot establish a miscarriage of justice. Because that prong is the only one at issue, and it often "folds into the merits" of the underlying claim for relief, *Guenther v. Marske*, 997 F.3d 735, 737 (7th Cir. 2021), we need not decide whether the claim is an appropriate use of § 2241. Either way, Mabie cannot prevail.

We start, however, by noting some confusion about Mabie's burden with respect to establishing a miscarriage of justice. Ordinarily, he would be required to show that,

with correct instructions, "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). But here, the district judge applied a harmless-error standard: whether it was "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999). That less-onerous standard normally applies on direct appeal from a conviction. On appeal, the government adopts it as well. (Its briefing in the district court was ambiguous.)

If the government's choice of the harmless-error standard is intentional, then it is stuck with that choice. When reviewing a request for collateral relief, we will not apply any procedural defense—including the correct burden of persuasion—that the government has waived. *See Wood v. Milyard*, 566 U.S. 463, 466 (2012); *see also Ryan v. United States*, 688 F.3d 845, 848 (7th Cir. 2012) (applying *Wood* to government's request to apply an incorrect, harmless-error review to collateral attack on jury instruction). When the government merely overlooks, and thereby forfeits, the correct standard, we relieve it of the forfeiture only in an "exceptional case." *Wood*, 566 U.S. at 471. The parties have not had the chance to state their positions on whether the government intentionally requested a harmless-error standard and, if not, whether this is an exceptional case. Because we conclude that Mabie cannot satisfy the saving clause even under harmless-error review, we need not solicit their views.

An erroneous jury instruction is harmless if the trial evidence was such that the jury's findings under one theory of guilt would necessarily require the same finding under the correct instructions. *See, e.g.*, *Turner v. United States*, 693 F.3d 756, 759 (7th Cir. 2012). Here, the jury found that Mabie knowingly transmitted messages that a reasonable person would have interpreted as threats. And those threats were unambiguous: If the recipients did not take Mabie's preferred course of action, he warned that persons could (1) get shot in the head; (2) be involved in a gun fight with him; (3) expect him to visit their homes to "work toward justice"; or (4) "suffer the consequences" of losing out on a "happy life."

Given the unambiguous nature of Mabie's communications, and the context in which he made them, no rational juror could conclude that he did not know how they would be received. *See United States v. White*, 810 F.3d 212, 222 (4th Cir. 2016) (omission of *Elonis* instruction harmless when defendant used "direct and declarative" language and gave "no other explanation for the message"). Mabie testified at trial that he did not wish to threaten or harm his victims, and that he wanted only to stop certain crimes and "get things back on the right track." But his messages had persuasive force only because

they contained threats of violence; they left no room for a peaceful resolution without the recipients bending to Mabie's will. Whether Mabie intended to carry out his threats or even had the capacity to do so is irrelevant. *See United States v. Dutcher*, 851 F.3d 757, 762 (7th Cir. 2017) (discussing 18 U.S.C. § 871(a)). Even after *Elonis*, Mabie's knowledge that his communications would be interpreted as threats is sufficient to sustain a conviction. *Id*. Mabie not only knew his messages would be received as threats but also was counting on it.

Mabie contends that the record on his § 2241 petition is incomplete because the trial judge quashed subpoenas for witnesses who would have testified about his intentions. But Mabie's motivation for those subpoenas was harassment, and even if those witnesses had testified that Mabie was trying to resolve his disputes peacefully (as Mabie claimed they would), none could have testified about whether he knew his messages would be received as threats—which, again, is enough for guilt. For similar reasons, we will not grant Mabie's request to remand for a hearing. Evidentiary hearings are unnecessary in postconviction proceedings if the petitioner does not allege facts that "if proven, would entitle him to relief." *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). We could imagine a case in which the sender of a threat wishes to prove that he was somehow unaware of his messages' contents (for example, because of a language-processing disability or a poor grasp of English), or wishes to prove that he had a sincere, if unreasonable, belief that his victims would not construe the messages as threats. But Mabie has asserted nothing of the sort. And he testified about his intent at his trial; another chance on the stand would not bolster his claim under *Elonis*.

Lastly, Mabie contends that his conviction is invalid for various other reasons, including withheld exculpatory evidence and perjured testimony from government witnesses. But Mabie already raised most of these arguments in his § 2255 motion, and they were rejected. *Mabie v. United States*, No. 4:12CV2086 ERW, 2013 WL 3884167 (E.D. Mo. July 26, 2013). He cannot relitigate the same claims. *See* 28 U.S.C. § 2244(a). To the extent that he cites other errors, everything aside from his *Elonis* claim could have been raised in that earlier motion or on direct appeal. Because § 2255 was not inadequate or ineffective to bring his non-*Elonis* claims, he cannot assert them in his § 2241 petition. *See id.* § 2255(e); *Davis*, 863 F.3d at 964.

One final note: Mabie has continued making threats throughout this litigation. Early in this appeal, he filed a letter threatening that if we did not intervene to stop mail disruptions at his prison, he would turn to murder as the "one course of justice available." And in his appellate brief, Mabie threatened that if we do not grant relief or

order a hearing, he will "wait and murder every last lying one of [the people involved in his conviction]." This is a grave abuse of the judicial process, and it is not Mabie's first. We previously sanctioned him for filing repeated, frivolous petitions for writs of mandamus. *In re Mabie*, 19-1371 (7th Cir. Mar. 15, 2019). Specifically, we directed the clerks of all federal courts in this circuit to return unfiled any papers submitted by Mabie—but we made exceptions for criminal cases and for applications for writs of habeas corpus, and we stated that we would lift the filing bar if Mabie paid his outstanding filing fees. *See Support Sys. Intl, Inc. v. Mack*, 45 F.3d 185, 186–87 (7th Cir. 1995). Because of Mabie's actions in this case, we now modify his filing bar to specify that any papers Mabie submits attacking his criminal convictions shall also be returned unfiled. Any application he files with this court for leave to file a collateral attack will be deemed denied 30 days after filing unless the court orders otherwise. *Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997). Finally, although Mabie may seek modification of his filing bar after two years from the date of this order, *see Mack*, 45 F.3d at 186, payment of his outstanding fees alone will not guarantee the filing bar's rescission.

AFFIRMED